REYNOLDS v. THE COUNTY OF PLYMOUTH.

THE SAME v. THE SAME ET AL.

1. **Public Lands**: ENTRY: TAXATION. The plaintiff located certain land with scrip and a patent was issued therefor, but, not being called for, was never delivered to plaintiff; after several years the scrip was discovered to be forged and the entry and patent were canceled, but the plaintiff was permitted to make a new entry of the land, and a patent was issued to him thereon: *Held*, that he acquired no title by the first entry which rendered the land subject to taxation.

2. ——: ——: RELATION TO FORMER ILLEGAL ENTRY. The plaintiff having acquired by the first entry neither title nor an equity in the land, the title acquired by the second entry did not relate back to the date of the first.

*Appeal from Plymouth District Court.*

FRIDAY, DECEMBER 10.

THESE actions were brought to determine the authority of the county to levy and collect taxes upon certain lands situated within its limits. The first action is at law, and plaintiff therein seeks to recover for taxes paid upon the lands for seven years, commencing with the year 1869; the second is to enjoin the collection of taxes levied by the county for three years, commencing with 1877. Substantially the same evidence was introduced in each case, and they are submitted in this court together upon one abstract. The plaintiff recovered in the first action the taxes paid by him for three years, beginning with 1875, and in the second case the collection of the unpaid taxes was enjoined. Defendants appeal.

*C. J. C. Ball* and *Joy & Wright*, for appellants.

*J. H. Swan* and *C. M. Hollis*, for appellee.

Beck, J.—I.  The plaintiff's claim to be released from the payment of the taxes is based upon the alleged fact that he

1. PUBLIC did not acquire the title to the lands until · after lands : entry : taxation. all of the taxes in question were levied; the title, prior thereto, not having passed out of the United States government.

The facts of the case are few and simple, and are briefly stated as follows:  In 1868 plaintiff's intestate located certain Agricultural College Scrip upon the land, and thereon received the usual certificate of location.  During the years following taxes were assessed upon the land, and, prior to 1877, they were regularly paid by plaintiff's intestate.  In due time patents were issued · by the government upon this entry and forwarded to the local land office for delivery, but, as they were never called for, were never delivered.  In 1877 it was discovered at the land department of the government that the scrip upon which the location was made was forged and counterfeit.  Thereupon the proper land officers of the government canceled the entries, and returned the scrip defaced and canceled to the local land office, and required the patents, which had not been delivered, to be returned to the department at Washington for cancellation, which was done. The officers of the local land office were required to notify the locator of these proceedings, but this was not done. After the expiration of sixty days, allowed for the locator to appear and appeal from the decision in the case, which was not done, the lands were again put upon the market and certain persons made homestead and timber culture entries thereon at the local land office.  It was subsequently made known to the general land office that the decedent had not been notified of the proceedings and acts affecting his title to the land, and thereupon the commissioner caused the home-

stead and timber culture entries to be canceled, and decedent's location to be reinstated. He was permitted to substitute genuine scrip or money in place of the counterfeit scrip, and patents were again issued to him for the land. The new patents were issued after the taxes involved in this case were levied.

II. Plaintiff insists that prior to the issuing of the new patents his intestate held no title or interest in the lands which rendered them subject to taxation. This position involves the only questions of law arising in the case. We will proceed to consider them.

III. The State cannot levy taxes upon the public lands within its borders while they remain the property of the United States. See section 755 of the acts of Congress of March 3d, 1845, admitting Iowa into the Union.

Upon the disposition of public lands of the United States they cannot be taxed for the year in which the entry or location thereof is made. Code, § 797, ¶ 7.

IV. We are to determine whether the title and equity to the land passed to plaintiff's intestate by the location of the forged scrip. The title of government lands passes to the purchaser by an entry or a location of a warrant or scrip, and a patent issued thereon. In this case the location and patent, after the discovery that the scrip was forged, were canceled and set aside. After the act of cancellation it cannot be claimed that the locator held title to the land, for he paid nothing for it. Surely it cannot be claimed that the forged scrip would support any claim to the land. The government, through favor, not because the locator held an equity to the land, reinstated the location and permitted genuine scrip or money to be substituted for the forged scrip, and thereupon issued a patent for the land. Until this patent was issued plaintiff's intestate held neither title nor equity in the land, and it was not taxable by the State. This was after the taxes involved in this suit were assessed. The conclusions we reach are supported by the following cases. *Calder v. Kee-*

*gan,* 30 Wis., 126; *Bronson v. Kukuk,* 3 Dillon, C. C., 490; *Danavan v. Kloke,* 6 Neb., 124.

V.   Defendants insist that upon the restoration of the location, and the issuing of a patent for the land, the title then acquired related back to the original location, from which time the locator must be regarded as holding the title to the land.   The difficulty in

2. ——— : ———:
relation to
former illegal
entry. .

the way of this position is this:   Plaintiff's intestate, as we have seen, acquired no title or equity by the location of the forged scrip.   The law will not, in order to hold the land subject to taxation, presume the existence of either title or equity.   In order to protect a title, or to attain the ends of justice, the courts will, under the doctrine of relation, which is a fiction of law, hold that a title began at the date of an entry or location upon the public lands.   But this doctrine cannot be invoked to burden the holder of a title, and require him, in violation of justice, to pay taxes when he held neither the equity nor title of the lands.   *Gibson v. Chanteau,* 13 Wal., 92.

We cannot in this case apply the doctrine of relation in order to subject the land to taxation at the time plaintiff's intestate held neither the title nor equity thereto.

Counsel for defendants cite *Iowa Homestead Co. v. Webster Co.,* 21 Iowa, 221; *Stryker v. Polk Co.,* 22 Id., 131, and *Heirs of Klein v. Argenbright,* 26 Id., 493, in support of their position.   These cases differ from the one at bar in this essential particular: there was in each case an equity in the land upon which the respective decisions are based.   In this case plaintiff's intestate acquired no equity by the location of the forged scrip.   The doctrine of the cases cited is, therefore, not applicable to this case.

We reach the conclusion that the judgments of the court below in both cases are correct; they are, therefore,

AFFIRMED.