VINTON, ADM'R, v. CERRO GORDO COUNTY.

1. **Taxation**: LAND: TITLE IN UNITED STATES: RECOVERY OF TAXES PAID.  Plaintiff sought to recover taxes paid by his intestate on land, on the ground that the land was not taxable—the title being in the United States.  The land had been entered by R. by the location of a land warrant, and plaintiff's intestate held title by conveyance from R., and while he so held he paid the taxes in question.  Afterwards he conveyed the land, and it passed to M.  R. and all parties subsequent to him believed that they had perfect title.  But M., on some notice received from the land-office, was induced to pay the receiver $1.25 per acre for the land, and thereupon received a patent conveying the land

to R., who made the original entry; and the patent recited that the original warrant had been relocated. *Held* that it did not appear from this that the original entry was invalid or had been cancelled, nor that R. and all who claimed under him did not have a good title; and plaintiff, accordingly, was not entitled to recover. (*Reynolds v. Plymouth Co.*, 55 Iowa, 90, distinguished.)

*Appeal from Cerro Gordo District Court.*

THURSDAY, JUNE 23.

THIS is an action to recover from the defendant certain taxes paid by Ira Fuller, deceased, upon 160 acres of land. It is claimed by the plaintiff, who is administrator of the estate of Fuller, that the land upon which the tax in controversy was paid was not liable to taxation, because it was at that time the property of the United States as part of the public domain, and that Fuller paid the tax in the mistaken belief that he was the owner thereof. There was a trial to the court, and a judgment for the defendant for costs. Plaintiff appeals.

*Richard Wilbur*, for appellant.

*John Cliggitt*, for appellee.

ROTHROCK, J.—It appears from the book of original entries in Cerro Gordo county that B. B. Richards entered the land by the location of land-warrant No. 906, on the 12th day of February, 1855. Richards conveyed the land by warranty deed to one Felt, who conveyed the same by warranty deed to Fuller, plaintiff's intestate, on the 23d day of March, 1857. On the 10th day of June, 1869, Fuller conveyed the land by warranty deed to Horace Vinton, who conveyed it by deed with like covenants in October, 1871; and on October 10, 1874, it was conveyed to W. H. Mason, who is the present owner. All of the owners of the land believed they had perfect title thereto until about July, 1884, when Mason received from the land-office at Des Moines some kind of a notice by which he was induced to pay to the receiver of the

land-office the sum of $200, and a patent for the land was issued in the name of Richards. The following is a copy of the patent: " *Whereas*, Benjamin B. Richards, of Dubuque county, Iowa, has deposited in the general land-office of the United States a certificate of the assistant treasurer of the United States, whereby it appears that full payment has been made by the said Benjamin B. Richards, according to the provision of the act of congress of the 24th of April, 1820, entitled ' An act to make further provision for the sale of the public lands,' and the acts supplemental thereto, for the [describing land in controversy,] in the district of lands subject to sale at Fort Des Moines, Iowa, containing one hundred and sixty acres, according to the official plat of the survey returned to the general land-office by the surveyor general, which said tract had been located by the said Benjamin B. Richards with warrant No. 906, for one hundred and sixty acres, (act of 1852,) said certificate 31,218 having been substituted for the warrant, which has been relocated: now know ye that the United States of America, in consideration of the premises, and in conformity with the several acts of congress in such cases made and provided, have given, etc., unto the said Benjamin B. Richards, and to his heirs, the said tract, to have and to hold, etc., unto the said Benjamin B. Richards, and to his heirs and assigns, forever."

The land was part of an even section, and within a railroad grant, and, if it belonged to the United States, it could not have been sold for less than $2.50 per acre.

It will be observed that the plaintiff seeks to recover for taxes paid from 1859 to 1867, inclusive. The last payment for which recovery is sought was made nearly twenty years ago. It seems to us that the claim for reimbursement from the county is, to say the least, a very ancient one. We think, however, that the judgment of the court below may be affirmed upon the ground that the land was subject to taxation for the years for which the taxes were paid.

The facts attending the entering of the land are not unus-

ual nor uncommon.   Double entries of military warrants and entries upon void warrants were frequently made, and not discovered for many years, and until the land became valuable by reason of improvements and the settlement of the country.   In such cases it has been the uniform practice of the land department to permit the person claiming title to perfect his title of record by paying the original government price of the land, which was $1.25 per acre.   That was precisely what was done in this case, if the original entry was void.   If the title was in the United States, and was so regarded by the authority charged with the administration of the land department, and the payment made by Mason was an original entry, he would have been required to pay $2.50 per acre to make the purchase.   But the patent issued shows that the payment of the $200 was not an original entry. It was, as the patent recites, a substitution for the warrant upon which the original location was made.   It does not appear that the original entry was at any time canceled or set aside.   The only evidence of the invalidity of the original entry is the recital in the patent that the warrant on which the entry was made had been relocated.   The warrant was therefore neither forged nor fraudulent; and it would seem to have been first located on the land in question.   Why it was relocated is not shown.   About all that is shown in the evidence is that the receiver of the land-office at Des Moines gave some sort of notice to Mason, upon which Mason sent $200 for a patent for the land.   For aught that appears in the record, the title passed to Richards by the original entry.

The facts in the case of *Reynolds v. County of Plymouth*, 55 Iowa, 90, relied upon by appellant, are quite different. In that case the entry was made upon forged and counterfeit agricultural college scrip.   When it was discovered by the land department that the scrip was spurious, the entry, and a patent issued in pursuance thereof, were canceled.   The land was again put upon the market, and certain persons made

homestead and timber culture entries thereon at the local land-office. When it was ascertained that the person who made the original entry had no notice of the cancellation of his entry, the homestead and timber culture entries were canceled, and the first locator was permitted to substitute genuine scrip or money in place of the counterfeit scrip. In the case at bar, as we have stated, there was no cancellation of the entry; and, so far as it appears, it was legally and properly made; but there had been a relocation of the warrant. It seems quite clear that, if any location was subject to cancellation, it was not the one in question.

AFFIRMED.