WILLIAM H. DURHAM, Appellee, v. BERNARD HUSSMAN, Appellant.

1. **Public Lands:** BOUNTY WARRANTS: CANCELLATION. Where a bounty land warrant has been lost, or an assignment thereof procured through forgery, the commissioner of the general land office has authority to suspend further proceedings under the entry, and, upon a proper showing, to vacate it.

2. ———: ———: ———: TAX TITLE: VALIDITY. Where after the location of a bounty land warrant by an assignee thereof, but before the issue of a patent, the warrant was cancelled by the commissioner of the land office because the assignment thereof was forged, but the location was not set aside, *held*, that the assignee had not such an interest in the land after such cancellation as rendered it subject to taxation, and that a tax title based upon a sale of the land while the title thereto remained in the government was invalid as against one who, more than ten years thereafter, succeeded to the rights of said assignee, and acquired a patent title by a payment in cash as a substitute for said warrant.

*Appeal from Carroll District Court.*—HON. J. P. CONNER, Judge.

FRIDAY, MAY 12, 1893.

ACTION in equity to have canceled a tax deed purporting to convey land which the plaintiff claims to own. From a decree in favor of the plaintiff, the defendant appeals.—*Affirmed.*

*Theodore G. Paine* and *Cole, McVey & Cheshire,* for appellant.

*Barcroft & McCaughan* and *C. A. Berry,* for appellee.

ROBINSON, C. J.—On the nineteenth day of May, 1858, Robert Craig located a bounty land warrant, issued to one William Long, upon the south half of the northeast quarter, and the northeast quarter of the northeast quarter, of section 27, in township 83 north, of range 35 west, in Carroll county. A certificate of location was issued and recorded in the office of the recorder of that county. No patent was issued upon the warrant, and on the first day of February, 1864, the warrant was canceled and declared void as against the United States by the department of the interior, on account of forgery of the assignment purporting to be that of William Long, but the location made by Craig was not canceled or set aside. On the twentieth day of July, 1875, the department of the interior published rule number 41 in regard to locations and assignments of bounty land warrants which has since been in force, and which provides as follows:

"When a valid entry is withheld from patent on account of the objectionable character of the warrant located thereon, the parties in interest may procure the issuance of a patent by filing, in the office for the dis-

trict in which the land is situated, an acceptable sub-
stitute for the said warrant. The substitution must be
made in the name of the original locator, and may con-
sist of a warrant, cash, or any kind of scrip legally
applicable to the class of lands embraced in the
entry."

On the nineteenth day of March, 1886, the plain-
tiff, by a regular chain of conveyances from Craig,
became the grantee of the interest Craig had acquired
in the land in controvery. The land had been assessed
and taxed for the years 1860, 1861, 1862, and 1864,
and on the fifth day of October, 1868, was sold for the
taxes of those years, which had not been paid. In
December, 1871, a treasurer's deed for the land was
issued and recorded. In February, 1874, the defend-
ant acquired the tax title to eighty acres of the land,
and in September, 1881, he acquired that title to the
remainder. By virtue of the title thus acquired he
claims the right to substitute for the canceled warrant,
and to enter the land and receive a patent therefor, and
has attempted to make the substitution. The plaintiff
claims the same right, and in June, 1888, furnished
one hundred and fifty dollars, which were paid to the
land office in Des Moines, under the direction of the
secretary of the interior, in the name of F. M. Hunter,
trustee, as a substitute for the warrant. The terms
imposed by the secretary provided for the issuing of a
patent in the name of Craig, to be held by the trustee
until the rights of the adverse claimants should be
judicially determined by a court of competent juris-
diction. A patent was issued in the name of Craig in
October, 1889. The plaintiff contends that the land
was not taxable for the years 1860, 1861, 1862,
and 1864, and that the tax deed is void. The defend-
ant insists that the location of the warrant by Craig
created a taxable interest in the land, and that the tax
deed is valid. He also claims that he and his grantors

had been in the actual and adverse possession of the land
more than ten years when this action was commenced;
that such possession was continuous, open, and noto-
rious; and that, having been under a claim of right based
upon the tax deed, it is sufficient to defeat the claim of
the plaintiff.   The district court adjudged the tax title
to be void, and that the plaintiff had the right to sub-
stitute money for the warrant, and quieted his title as
against the defendant.

I.  The second paragraph of the petition alleges
that on the first day of February, 1864, the warrant

1. PUBLIC lands:  which was located by Craig upon the land
bounty war-
rants: can-   in question was canceled and declared
cellation.   void by the department of the interior,
and that allegation is admitted to be true.   The order
canceling the warrant was indorsed upon it in words as
follows: "This warrant has this day been canceled and
declared void as against the United States, on account
of forgery in the assignment thereof."   The appellant
contends that the department of the interior possessed
no power to cancel a land warrant in any event, for
the reason that the question whether the assignment
was forged was judicial; but that, if it had such power,
it could not be exercised without notice to the parties in
interest; and it is claimed such notice is not shown in
this case.

The power to cancel bounty land warrants which
have been lost or destroyed was conferred upon the
secretary of the interior by an act of congress entitled
"An act to authorize the reissue of land warrants in
certain cases, and for other purposes," approved June
23, 1860.   The act authorized the secretary to issue
new warrants in lieu of those canceled, and provides
that, when new warrants shall be issued, the original
warrants shall be deemed and held to be null and void.
The answer in this case alleged that the warrant was
lost by Long, and the case is therefore brought within

the purview of the act of congress cited. It is true that the answer alleges that before the warrant was lost it had been assigned in blank, and duly witnessed and acknowledged, according to the rules of the department of the interior; that while in that condition it was found by some person to the defendant unknown, from whom Craig purchased it in good faith, without notice of the loss, and inserted his name in the blank. Whether these averments, if true, show that Craig acquired a good title to his warrant, we need not determine, for the reason that they are not confessed, and are not sustained by any proof. The facts admitted show that the warrant was lost to the rightful owner, and that an officer of the government, clothed with power to act, ordered that it be canceled. The record before us shows nothing as to the proceedings had in connection with the cancellation of the warrant, and, in the absence of averment and proof to the contrary, we must presume that they were regular. The action of which the appellant complains may have been taken after due notice to all parties interested in the warrant canceled, and a new warrant in lieu of it may have been issued to the rightful owner of the original, and accepted by him in satisfaction of his claims. In this condition of the record we can not say that the cancellation of the warrant was without authority, but, on the contrary, we must presume that it was valid.

It is not necessary, however, to rest our conclusion in this case upon the act of congress specified. It was said in *Cornelius v. Kessel*, 128 U. S. 456, 9 Sup. Ct. Rep. 122, that "the power of supervision possessed by the commissioner of the general land office over the register and receiver of the local land offices in the disposition of the public lands undoubtedly authorizes him to correct and annul entries of land allowed by them, where the lands are not subject to entry, or the

parties do not possess the qualifications required, or have previously entered all that the law permits. The exercise of this power is necessary to the due administration of the land department. If an investigation of the validity of such entries were required in the courts of law before they could be canceled, the necessary delays attending the examination would greatly impair, if not destroy, the efficiency of the department." The officers of the land department are not only required to determine whether lands are subject to entry, and whether the applicants are qualified to make entries, but, in the case of land warrants, it is within their province to ascertain whether the person seeking to locate it is the person to whom it was issued, or one lawfully claiming through him, and, in case of an assignment, whether it is genuine. Therefore, when the commissioner of the general land office was advised that the assignment of the warrant in question was forged, he was authorized to suspend further proceedings under the entry, and, upon a proper showing, to vacate it, so far as it depended upon the warrant. That he did more than to suspend proceedings under the entry, and canceled the warrant, is a matter of which no one interested in the warrant is complaining. Long is not a party to this cause, and the assignee of Craig is satisfied with the action of the land department, which terminated in the issuing of a patent to Hunter, as trustee. That action must, therefore, be regarded as valid and final for the purposes of this case. What we have said in regard to the powers of the secretary of the interior and commissioner of the general land office is not intended to apply to a case where a patent has been issued before an attempt to cancel or suspend the entry is made. *Moore v. Robbins*, 96 U. S. 530.

II. Although the warrant located by Craig was canceled, the location or entry was not set aside, and

2. ——: ——: ——: it is insisted that it gave to him such an
**tax title: validity.** interest in the land that it became subject
to taxation by the state. But the warrant located did
not belong to him, and the government acquired noth-
ing by its surrender, but was liable to the rightful
owner for that warrant, or a new one in lieu of it.
Craig paid nothing for the entry, and it conferred upon
him neither the legal nor the equitable title to the land.
It is true that it was the practice of the land depart-
ment, at the time the warrant was located, to afford a
person who had located such a warrant, when such
location was set aside because of some defect in the
warrant, an opportunity to secure the land by purchase
or by the location of another warrant, where the loca-
tion set aside was made in good faith. Lester, Land
Laws, 615, and rule 41 of 1875, made definite the prac-
tice in such cases. But the right thus given was in the
nature of a privilege, which might be exercised at the
option of the person for whose benefit it was given,
but, until exercised, the title to the land, both legal
and equitable, remained in the general government.
Lands of the general government in this state are not
taxable, nor can they be taxed for the year in which
they are entered, located or sold. *Reynolds v. County
of Plymouth*, 55 Iowa, 92; Code, section 797, subdivi-
sion 7. It is true that lands derived from the general
government may be taxable before patents therefor
have been issued. *Cedar Rapids & M. R'y Co. v. Car-
roll County*, 41 Iowa, 159; *Iowa Railroad Land Co. v.
Fitchpatrick*, 52 Iowa, 244. But such lands are taxable
only when the equitable title has passed from the
general government, and the person who has acquired
it has done all which can be required of him, and has a
completed right to the patent. *U. P. R'y Co. v. McShane*
22 Wall. 444; *K. P. R'y Co. v. Prescott*, 16 Wall. 603.
Neither the legal nor the equitable title to the land in
controversy passed from the general government until

the twenty-fourth day of June, 1888, when the plaintiff paid to the receiver, at Des Moines, the money required as a substitute for the patent. It follows that the land was not taxable before the year 1889, and that no title was conveyed by the tax deed.

It is said that the patent, when issued, related back to the original location, and *Wheeler v. Merriman,* 30 Minn. 372, is relied upon as supporting that claim. It was said in that case that "it is well settled that land purchased of the United States and paid for, though not patented, is subject to taxation." That may be conceded, subject to such limitations as are imposed by the state in which the land is situated, but when, in law, is payment in such a case as this made? Certainly not when a warrant which can not be received legally is tendered in payment. For some purposes a patent, when issued, operates to vest the title in the patentee, by relation back to the date of the certificate of location or entry, so as to make of no effect an intervening duplicate certificate of entry. *Heirs of Klein v. Argenbright,* 26 Iowa, 494. In *Gibson v. Chouteau,* 13 Wall. 92, it was said "that the doctrine of relation is a fiction of law, adopted by the courts solely for the purposes of justice, and is only applied for the security and protection of persons who stand in some privity with the party that initiated proceedings for the land, and acquired the equitable claim or right to the title." But there is no privity between the defendant and Craig. A tax title is not derivative, but is new and independent of former titles; and to hold that by reason of the payment of June, 1888, the equitable title to the land passed from the United States thirty years before that time would be not only unauthorized, but contrary to the doctrine of relation as stated. Our conclusion is sustained by the cases of *Reynolds v. County of Plymouth,* 55 Iowa, 93, and *Calder v. Keegan,* 30 Wis. 126. The statute of limita-

tions does not run against the United States. Since Craig acquired no taxable interest in the land by his location, the tax deed conveyed no title, and the defendant has acquired no right by the possession of the land held by himself and his grantors. The general land office treated the entry of Craig as sufficient to enable him and his assignee to perfect his entry, and thus acquire title to the land. The plaintiff has acquired all rights which the original entry conferred upon Craig, and, by his payment of money in lieu of the warrant and the issuing of the patent, has become entitled to the land.

The decree of the district court is AFFIRMED.