THAYER, Circuit Judge,
after stating the case as above, delivered the opinion of the court.
The motion to remand the case to the state court appears to have been properly overruled. If the plaintiffs had contented themselves, as they might have done, with the simple averment that they were the owners of the land in controversy, and that the defendants had wrongfully entered upon said lands, and unlawfully removed coal therefrom, to the plaintiffs’ damage in a certain sum, it is doubtless true that the complaint would not have disclosed a federal question, and, under repeated decisions, the venue could not have been changed *436 to the federal court. Tennessee v. Union & Planters’ Bank, 152 U. S. 454,14 Sup. Ct. 654; Chappell v. Waterworth, 155 U. S. 102,15 Sup. Ct. 34; Postal Tel. Cable Co. v. Alabama, 155 U. S. 482, 15 Sup. Ct. 192; Kansas v. Atchison, T. & S. F. Ry. Co., 77 Fed. 339. But the complaint was not so drawn. It was carefully framed for the purpose of showing that, by filing his so-termed “coal declaratory statement” on October 2,1880, the plaintiff Evans acquired such an interest in the lands in controversy that when a patent therefor was issued on February 28, 1895, he became entitled to recover the value of all coal which had been mined and removed from the land without his consent between the dates last aforesaid. Inasmuch as the plaintiffs demanded judgment for coal removed long prior to December 31, 1894, when Evans was permitted to enter and pay for the lands, and during a period while the defendants were evidently in the possession of the same under the uncanceled entry of McMaster, the question is presented by the complaint whether the doctrine of relation, which is invoked, entitled the plaintiff Evans, after he had received a patent, to demand compensation for all trespasses committed on the land subsequent to the filing of his declaratory statement. It is true that the doctrine of relation is a doctrine of the common law, but the fact remains that it cannot be applied in the present case without considering, in the first instance, the nature and extent of the interest in the land which Evans acquired by filing his declaratory statement, nor without determining how far his rights under such declaratory statement were affected by the alleged order of suspension made by the commissioner of the general land office on October 7,1880, nor without considering what were the rights of the parties with respect to the lands while the alleged contest between them was pending and undetermined in the general land office. These are all questions which involve an examination' and construction of the laws of the United States before the doctrine of relation, on which the plaintiffs rely, can be intelligently applied. The case therefore bears no analogy to a class of cases in which it is held that a suit is not one of federal cognizance, because the title to certain land which is in controversy originally emanated from the United States, provided that title is not in dispute, - but the litigation affecting the land relates to other matters. Romie v. Casanova, 91 U. S. 379. In the case at bar, it appears, we think, from the face of the complaint, that the claim preferred by the plaintiffs cannot be adjudicated without construing certain federal statutes, and considering the effect of certain proceedings in the land office which have been taken thereunder. It follows, therefore, that the case is one of federal cognizance, and that the motion to remand it was properlv denied. St. Paul, M. & M. Ry. Co. v. St. Paul & N. P. R. Co., 32 U. S. App. 372, 15 C. C. A. 167, and 68 Fed. 2.
Passing to the question whether the complaint states a cause of action, it is to be observed that it charges a continuous trespass committed by the defendants, which commenced January 8, 1885, when the land wás conveyed to the Durango Land & Coal Company, and ended on August 26, 1895. The alleged trespass covers a period of about eight months from and after December 31, 1894, when, as the *437 complaint shows, Evans was allowed to enter and pay for the coal lands in controversy, and received a receiver’s receipt therefor. No reason is perceived, therefore, why the complaint did not show a good cause of action as to the coal mined and removed subsequent to the latter date, whatever may be the view ultimately entertained as to the plaintiffs’ right to recover for the coal mined and removed prior thereto. It is suggested, however, that the circuit court of the United States for the district of Colorado had no jurisdiction of the cause of action for trespasses committed subsequent to December 31, 1894, and that so much of the complaint as charges trespasses after that date may be ignored. This suggestion appears to be based on the assumption that the trespasses last mentioned were separate and distinct from those committed prior to December 31,1894, and that an action to recover damages therefor involved the consideration of no federal question. In other words, it seems to be taken for granted that the complaint stated two causes of action, one of Federal cognizance, and another that was exclusively cognizable by the local or state courts. We think that this assumption is untenable. The complaint, as we view it, states but a single cause of action for a continuous trespass of some years’ duration. It contains but one count, and the damage claimed is a lump sum for the injury done to the land during the entire period that it is alleged to have been wrongfully occupied by the defendants. It is doubtless true that so much of the plaintiff’s claim as is founded upon trespasses committed prior to December 31, 1894, is subject to certain defenses, which cannot be as well made against the claim for trespasses committed subsequent to that date; but the fact that different defenses may be pleaded to parts of an entire claim does not establish that the claim itself is made up of different and independent causes of action. Pirie v. Tvedt, 115 U. S. 41, 5 Sup. Ct. 1034, 1161; Railroad Co. v. Ide, 114 U. S. 52, 5 Sup. Ct. 735; Barth v. Coler, 19 U. S. App. 646, 649, 9 C. C. A. 81, and 60 Fed. 466. Even if it happens, therefore, that the plaintiffs will only be able to show a right to recover for such coal as was mined and removed subsequent to the entry of December 31, 1894, yet that result will not deprive the federal court of its right to enter a judgment for the value of coal so mined and removed. The cause of action stated in the. complaint is clearly single and indivisible, and the plaintiffs have so stated their cause of action as to show that an adjudication upon their claim as presented necessarily involves the construction of federal statutes. It results from these facts that the trial court, by the proceedings for removal, lawfully acquired jurisdiction of the entire case; that is to say, the right to enter a judgment for any portion of the demand which the plaintiffs showed themselves entitled to recover, and that jurisdiction could not be affected by subsequent events. If, for any reason, the plaintiffs fail to recover for the injury done to the land prior to December 31, 1894, such failure will no more impair their right to recover for injuries* if any, done subsequently, than would a failure to prove that they had sustained the entire amount of damage laid in the compláint, or a failure to prove that the damages exceeded $2,000. St. Paul, M. & M. Ry. Co. v. St. Paul & N. P. R. Co., supra.
*438 It is further urged that the demurrer was properly sustained, because the complaint shows that the plaintiff Evans had assigned an interest in the cause of action sued upon to his co-plaintiff Shackle-ford, and that the latter had, in like manner, sold and assigned a part of his interest to the plaintiffs Carlisle and Tetard. This contention is without merit. While it is true that the law does not permit a debtor to be sued for a part of an entire demand which has been assigned by his creditor to a third party, yet the doctrine in question does not prevent an assignment of a part of a demand, provided the assignor and the assignee join in a suit to enforce the entire claim. The rule which is invoked by the defendants rests upon the ground that a debtor ought not to be annoyed by several suits brought by different parties to collect parts of a claim or debt, which might have been enforced by the creditor in a single suit. The reason upon which the rule against splitting a cause of action rests has no. application to a case like the one at bar, where all the persons who have acquired an interest in the demand join in a single action to enforce it. It is a matter of no concern to a debtor whether his creditor assigns an interest in the debt to third parties, provided no more than one suit is brought to collect it.
A further contention that the complaint, as a whole, is insufficient, because it fails to allege that the plaintiffs below were in possession of the land in controversy at the date of the alleged trespass, is, in our opinion, equally without merit. The action was brought in a state where the Code of Procedure has been adopted, and the various forms of action known to the common law have been abolished. The owner of property, whether in or out of possession, is entitled to recover for all injuries done to it by a wrongdoer. At common law, if he was in possession when the injury was done, he might obtain redress therefor in an action of trespass quare clausum fregit, whereas, if he was out of possession, he was compelled to bring an action on the case. These common-law forms of action having been abolished by the Code, a cause of action is sufficiently disclosed if the fact of ownership in the plaintiff, and the fact that an injury has been done to the land without the permission of the owner, are stated in ordinary and concise language. Fitzpatrick v. Gebhart, 7 Kan. 35, 42, 43. Tested by this rule, the complaint is sufficient.
This brings us to the question of chief interest and importance which arises in the case, namely, whether the complaint shows a right of recovery in the plaintiffs for the coal mined and removed from the land in controversy prior to December 31, 1894, when Evans entered the land, and paid the purchase money. It may be conceded-that a patent for -public land has, on several occasions, been held to take effect as of the date of the initial step taken by the patentee, under the laws of the United States, to obtain a title to the land. Landes v. Brant, 10 How. 348, 372, 373; Lynch v. Bernal, 9 Wall. 315, 325; St. Onge v. Day, 11 Colo. 368,18 Pac. 278; Shepley v. Cowan, 91 U. S. 330, 337; Cothrin v. Faber, 68 Cal. 39, 4 Pac. 940, and 8 Pac. 599; Chavez v. Chavez De Sanchez (N. M.) 32 Pac. 137, 145. Nevertheless, there appears to be no hard and fast rule giving a patent effect by relation as of a date anterior to the time when an entry is fully con *439 summated by the payment of the purchase money, or by the doing of some other equivalent act, such as the surrender of a land warrant or the selecton of land to supply an ascertained deficiency in a land grant. It is generally agreed that, when such acts are performed, the equitable title becomes complete, subject, of course, to the right of the land department to cancel the entry, or the selection, prior to the issuance of the patent, for good and sufficient cause shown, why the entry or selection should not have been allowed. The doctrine of relation is a legal fiction, which was invented and is applied solely for the protection.of persons who, without fault of their own, would otherwise sustain an injury. Being of equitable origin, and designed to prevent fraud and injustice, it is a doctrine which is never applied when it would have a contrary effect. Gibson v. Chouteau, 18 Wall. 92, 101; Reynolds v. Plymouth Co., 55 Iowa, 90, 93, 7 N. W. 468; Calder v. Keegan, 30 Wis. 126; Musser v. McRae, 44 Minn. 348, 46 N. W. 673; Hussman v. Durham, 165 U. S. 144, 17 Sup. Ct. 253. In the case last cited (Hussman v. Durham) the supreme court said:
“A title by relation extends no further backwards than to the inception of the equitable right. * * * In other words, the United States does not part with its rights until it has actually received payment, and if, by mistake, inadvertence, or fraud, a certificate of location, which is equivalent to a receipt, is issued, when in fact no consideration has been received, do equitable title is passed thereby; and a conveyance of the legal title does not operate by relation back of the time when the actual consideration is paid.”
In that case the court accordingly declined to give a patent effect by relation as of the date when the initial step was taken to acquire a title to certain public land by the location of a land warrant, where the result of giving it such effect would have been to subject the land to the claims of the holder of a tax title, although he had paid taxes which were assessed when the land was apparently subject to taxation, and had afterwards expended money in improving it.
In the light of these principles the complaint must be examined. The plaintiffs found their right to recover for coal mined and removed prior to December 31, 1894, on the allegation that Evans filed a coal declaratory statement on October 2, 1880. The filing of this statement, assuming the facts stated therein to be true, gave Evans, in the language of the statute, “a preference right of entry,” nothing more and nothing less. Section 2348, Rev. St. U. S. Manifestly, it did not create such a complete equitable title as is acquired when public land is entered and paid for. To have made his equitable title complete, Evans should have proved his rights and paid for the land within one year after October 2, 1880. In default of so doing, the statute (section 2350, Rev. St. U. S.) declared that the land filed against should be subject to entry by “any other qualified applicant.” The complaint shows affirmatively that this was not done; that no payment was made by Evans until December 31, 1894; and that, after the year limited for making payment had expired, Byron McMaster was permitted by the officers of the land department to enter the land, on the theory, no doubt, that Evans’ preference right of entry had been forfeited. The only reason stated in the complaint why the entry of McMaster was eventually canceled by the officers of *440 the land department is that they found and decided that the entry was not made for his own benefit, but presumably for the benefit of the Durango Land & Coal Company. It is not alleged in the complaint that the McMaster entry was canceled because the plaintiff Evans had previously filed a declaratory statement, and obtained a preference right of entry, or that such preference right of entry in the judgment of the land department in any manner affected the validity of the McMaster entry. We must presume, therefore, that, but for the fact that McMaster did not enter the land for his own benefit, such entry would have prevailed over the preference right of entry originally secured by Evans, and that the land would have been patented to the defendant, on the ground that such preference right had either been lost or abandoned. In this aspect of the case, it follows that Evans’ right to the land had its origin in the cash entry which he was allowed to make on December 31,1894, after the McMaster entry was canceled, and that his patent ought not to be given effect by relation as of an earlier date, because whatever right he had theretofore acquired had been lost.
We have not overlooked the averment contained in the complaint, to the effect that the declaratory statement filed by Evans was suspended by order of the commissioner of the general land office “until such time when the necessary and proper instructions should have been issued by the said commissioner”; but, in our judgment, that allegation is not sufficient to show that the failure of Evans, for a period of 12 years, to make his proof and payment, was due to the neglect of the officers of the land department in preparing the necessary instructions under which such steps could be taken. The com-, plaint does not show, by direct averment or necessary intendment, that from October 2, 1880, until June 27, 1892, the land department failed or refused to promulgate instructions under which Evans could have prosecuted his claim and perfected his entry; and, in the absence of such an averment, we will not presume that his rights were held in abeyance for such an unusual length of time, and that he was for 12 years deprived of the power to prove up his claim, and pay for the land, without fault of his own, and solely through the neglect of the officers of the land department. Inasmuch as the plaintiffs invoke the equitable doctrine of relation for the purpose of recovering the value of coal which the defendant company has taken out of the land in controversy, doubtless at great labor and expense, and during a series of years, they ought to show, by proper averments, why Evans remained silent and inactive for such a long period after his declaratory statément was filed, and they should also show that his apparent failure to comply with the law and to exercise due diligence was excusable. Without some further allegations showing how it happened that no action was taken by Evans towards perfecting his claim between October 2, 1880, and June 27, 1892, although for a greater part of that time the defendant company was in possession of the land, and mining coal thereon, the inference is clear that he must have been guilty of gross laches in prosecuting his claim, and in asserting his rights; and such laches on his part would seem to be a sufficient reason why his patent should not be given effect by relation as *441 of the date when he filed his declaratory statement. It may be that facts can be shown which will excuse Evans’ apparent want of diligence in perfecting his title, but we are constrained to hold that the present complaint does not contain such a showing, nor any averments which would justify us in holding that his patent should be given effect by relation as of a date anterior to December 31, 1894. Under the averments of the complaint, as heretofore stated, there would seem to be a right to recover for such coal as the defendant company may have mined and removed from the land subsequent to the latter date, and for that reason we think that the demurrer to the complaint should have been overruled. The judgment of the circuit court is accordingly reversed, and the case is remanded for a new trial.