Miller vs. Donahue.

---

MILLER, Appellant, vs. DONAHUE, Respondent.

*May 24 — June 11, 1897.*

*Tax titles: Liability of land to taxation: Mistake in patent: Cancellation by executive department: Evidence: Tenants in common.*

1. A. purchased for cash from the United States a quarter section of land. The duplicate certificate of entry delivered to him described the land as the S. W. ¼ of a certain section, but the remainder of the entry papers and the patent were issued for the S. E. ¼ of the same section. The original application was lost. A. caused the duplicate certificate to be recorded, and subsequently conveyed

Miller vs. Donahue.

the S. W. ¼ to a third person. The patent was received at the local land office for delivery, but has since been lost or destroyed. The S. E. ¼ was sold for taxes, and title based on the tax deeds became vested in plaintiff. Twenty-seven years after the entry A. claimed to discover that a mistake had been made in the records of the land office whereby the S. E. ¼ had been patented to him instead of the S. W. ¼, and he thereupon made an *ex parte* application to the land department, without notice to the owner of the tax title, to have it rectified, which was granted. The S. W. ¼ having, in the meantime, been patented to other parties, A. reconveyed the S. E. ¼ to the United States, and his entry money was returned and patent canceled. The defendant thereafter entered the S. E. ¼ as a homestead and took possession of the same. Plaintiff brought ejectment against him. A. died before the commencement of the action, and his testimony was not obtained. *Held:*

(1) That upon issuance of the patent to A. the entire title to the S. E. ¼ passed to him, so as to render the land subject to taxation by the state.

(2) That the action of the land department in attempting to cancel A.'s patent was unauthorized and void as to those claiming title under the tax sale.

(3) That the record of such proceedings was inadmissible to show that a mistake in A.'s entry in fact occurred.

(4) That the recording of the duplicate certificate by A., and the execution and delivery by him of a warranty deed of the S. W. ¼, were of themselves insufficient to establish such mistake.

2. Land was sold for the taxes of 1866 and 1868 to the county, and deeds therefor were issued to W. & P. and W. respectively, as its assignees, but it did not appear that W. was a co-tenant with P. in the ownership of the first certificate at the time the second was assigned to him, or that he was then liable, legally or equitably, for the taxes on which the second certificate was based. *Held,* that W.'s deed was not invalid because P. was his co-tenant under the first deed.

[WINSLOW, J., dissents, being of the opinion that the title to the S. E. ¼ remained in the United States, and hence that it was never taxable.]

APPEAL from a judgment of the circuit court for Chippewa county: R. D. MARSHALL, Circuit Judge. *Reversed.*

This is an action of ejectment, to recover the *S. E.* ¼ of section 7, township 29, range 5, in the county of Chippewa.

Miller vs. Donahue.

The answer is a general denial. The cause was tried by the court, a jury having been waived. The evidence is almost entirely documentary.

The plaintiff put in evidence two tax deeds, namely, one from Chippewa county to Francis W. Woodward and Henry C. Putnam, dated January 12, 1870, upon the sale of said lands for taxes May 8, 1866, which deed was duly acknowledged and recorded in Chippewa county, January 13, 1870, and another tax deed for the same premises, from Chippewa county to Francis W. Woodward, dated May 24, 1872, upon the sale of said premises for taxes May 12, 1868, duly acknowledged and recorded May 28, 1872, and deeds of conveyance whereby the title of the said grantee, Woodward, in said tax deeds, became and was vested in the plaintiff, September 5, 1873. He also put in evidence a certificate of the register of the Eau Claire land office, showing that said lands were entered by Hiram S. Allen, January 6, 1854, together with a copy of the patent, certified to by the recorder of the general land office, from the United States to said Allen, for said lands, dated December 15, 1854, in the usual form. Across the face of the patent were written the following words: "Canceled by the commissioner's letter 'M,' dated January 30, 1883, to the R. & R., at Eau Claire, Wisconsin. S. W. Clark, Recorder;" and there was a large cross over the date of the patent.

The defendant offered in evidence a certified copy of the tract book of the land office at Eau Claire, showing the entry of the land in question by Hiram S. Allen, January 6, 1854, and the cancellation of this entry upon reconveyance to the United States, as shown by said commissioner's letter F, dated January 24, 1883, and showing a homstead entry of the same lands by the defendant May 15, 1894. Defendant offered in evidence the duplicate certificate of entry by Hiram S. Allen of the S. W. ¼ of the same section, dated January 6, 1854, which had been recorded in the office of the reg-

Miller vs. Donahue.

ister of deeds for Chippewa county, August 18, 1864. It
was claimed by the defendant that, by mistake of the offi-
cers of the land office, the entry papers, other than the du-
plicate receipt issued to Allen, described and were issued for
the *S. E.* ¼ of said section, for which said patent had issued
·as aforesaid.

It does not appear that the patent was ever delivered to
Allen, or that he knew of the alleged mistake until about
·the year 1881, when he applied for a return of the purchase
money paid on his said cash entry. What was done there-
upon appears from the following letter of the commissioner
of the general land office of January 24, 1883, to the register
and receiver of the land office at Eau Claire, Wisconsin:

"Gentlemen: Referring to my letter F of the 22nd of
November, 1881, advising you that action was suspended
upon the application of Hiram S. Allen for return of pur-
chase money paid on his cash entry No. 769. . . . . The
facts in this case are that January 26, 1854, duplicate cash
receipt No. 769 was issued to said Hiram S. Allen, for the
*southwest* quarter of section 7, township 29 north, of range
5 west, Wisconsin, while the remainder of the entry papers
were issued for the *southeast* quarter of said section. The
original application being lost or destroyed, it is now im-
possible to determine thereby the tract applied for; but Mr.
Allen asserts that he applied for, and intended to enter, the
*southwest* quarter; and, not being aware of any error being
made, he sold and transferred said *southwest* quarter, and
the Chippewa Lumber & Boom Company now holds title to
the same, based on his duplicate receipt, and he desires the
money paid for said land to be repaid to his assigns, the said
company. The *southeast* quarter was patented to said Hiram
S. Allen, December 15, 1854, and transmitted to the local
office August 9, 1855, and the receipt of same at said office
was acknowledged September 5, 1865. June 10, 1880, the
register at La Crosse reported that the said patent was not

on file in said office.  Mr. Allen swears he has never received
the patent, and it appears to have been lost or destroyed.
The *southwest* quarter of said section was selected by the
Wisconsin (now the Chicago, St. Paul, and Minneapolis) Rail-
road Company, as the indemnity lands, under the act of May
5, 1864, and patented August 24, 1872.  Mr. Allen first ap-
plied to surrender his claim to the *southeast* quarter, and have
his entry amended to embrace the *southwest* quarter; and by
letter F, of July 24, 1881, you were directed to submit the
facts to the railroad company, and request them to recon-
vey said *southwest* quarter to the United States, and accept
patent for the *southeast* quarter in lieu of same; but as shown
by letter of the 22nd of July, 1881, the company declined to
accede to this method of adjustment, and, as it is now be-
yond the power of this office to perfect Mr. Allen's title to
the *southwest* quarter, the tract purchased by him, the recon-
veyance by him of the *southeast* quarter to the United States
is accepted, and his entry thereof is this day canceled upon
the files and records of this office.  You will make the proper
notes upon your records with reference to this letter.  The
repayment of the purchase money will form the subject of
another communication.  Advise the parties in interest.

"Respectfully,

"N. C. McFARLAND,

"Commissioner."

The certificate of entry returned to the general land office
was for the *S. E.* ¼ of said section; and a certified copy
thereof, with a note indorsed thereon as follows: "To R. & R.,
Eau Claire, Wisconsin: Land conveyed to the United States,
and entry canceled; patent lost or destroyed, and surrender
of same for cancellation waived in this case.  [Signed] Bell,
Div. F.,"— is contained in the record.  The entry money
paid by Allen was returned.

The finding of the court below was substantially in ac-
cordance with these facts, and, as a matter of law, that said

Allen did not enter, or acquire any title to, the land in question, which would subject the same to taxation; and judgment thereupon was given for the defendant, from which the plaintiff appealed.

For the appellant there was a brief by *Jenkins & Jenkins*, and oral argument by *John J. Jenkins*.

For the respondent there was a brief by *Wickham & Farr*, and oral argument by *James Wickham*.

PINNEY, J.   When the plaintiff had put in evidence the two tax deeds, with proper conveyances to himself, he had made out a *prima facie* title to the premises, upon which he could recover, unless the defendant succeeded in showing that the lands were not taxable at the time the taxes were levied, for the nonpayment of which they were so sold and conveyed.

The defendant's contention is that, by mistake, all the entry papers described Allen's entry as made for the *S. E.* ¼, when it is claimed that he applied in fact for the *S. W.* ¼ of the section, except that the duplicate certificate of the entry delivered to him was for the *S. W.* ¼.   The certificate of entry forwarded to the general land office was for the *S. E.* ¼, and a patent was issued to him accordingly, and recorded by the recorder of the general land office December 15, 1854.   It appears to have been forwarded to the local land office for delivery, but has since been lost or destroyed.   Beyond all question, the patent vested the entire title to the land in Allen.   The three-years statute of limitations on the tax deeds had run, as against his title, as early as May 29, 1875. It is claimed that Allen did not discover the mistake until December, 1881, more than twenty-seven years after the date of the patent; and on the 24th of January, 1883, upon an *ex parte* application, without any notice to the holder of the adverse title under the tax deeds, Allen obtained cancellation of the patent, and a return of his money, upon the

Miller vs. Donahue.

grounds stated in the letter of the commissioner of the general land office, it appearing that the S. W. ¼ of the section had in the meantime been otherwise disposed of. The act of the executive department in thus attempting to cancel the patent was, we think, unauthorized and void, and that neither the patent nor the title which it conveyed was thereby in any way affected or impaired. The patent was issued in a case within the scope of the authority of the land department, and there was nothing upon file or of record to show that any mistake had occurred.

In *Moore v. Robbins*, 96 U. S. 530–532, it was held that "a patent for public land, when issued by the land department, acting within the scope of its authority, and delivered to and accepted by the grantee, passes the legal title to the land. All control of the executive department of the government thereafter ceases." The court, by Mr. Justice MIL-LER, further says: "With the title passes away all authority or control of the executive department over the lands, and over the title which it has conveyed. . . . If fraud, mistake, error, or wrong has been done, the courts of justice are as open to the United States to sue for the cancellation of the deed, or for a reconveyance of the land, as to individuals; and, if the government is the party injured, this is the proper course." In *U. S. v. Stone*, 2 Wall. 525, the court said: "A patent is the highest evidence of title, and is conclusive, as against the government and all claiming under junior patents or title, until it is set aside or annulled by some judicial tribunal. In England this was originally done by *scire facias*, but a bill in chancery is found a more convenient remedy." In the subsequent case of *U. S. v. Schurz*, 102 U. S. 378, it was held that, when a patent for a part of the public lands has been regularly signed, sealed, countersigned, and duly recorded, the patentee has a perfect right to the possession of it; that the power of the land department over the proceedings to acquire title to the public land ceases when the

Miller vs. Donahue.

last official act necessary to transfer the title is performed. "In such case the title to the land conveyed passes, by matter of record, to the grantee, and the *delivery* which is required when the deed is made by a private individual is not necessary to give effect to the granting clause of the instrument." Pages 396 and 397.

In that case the status and effect of an undelivered patent, and its effect on the title to the lands, were carefully considered. It was contended that the patent in that case, which had been signed, sealed, and countersigned, and recorded, and then sent to the register of the land office for delivery, had *never been delivered, and had always remained under the control* of the officers of the land department, was ineffectual for want of delivery, and "that this execution of the patent concluded nothing, and the authority of the secretary and the commissioner of the general land office to deal with the whole subject, including the relator's right to the land, remained unaffected by the patent," as seemed to be inferable from the case of *Moore v. Robbins*, 96 U. S. 530; and *Bell v. Hearne*, 19 How. 252, and other cases, were much relied on by the defendant to show that the whole matter remained *sub judice*, so to speak, in the land department, with power to vacate the entry and cancel the patent. 102 U. S. 388–390, 395, 396. But these contentions, there sharply presented, were wholly overthrown by the decision in *U. S. v. Schurz, supra,* and have ever since been so considered. The court further says: "From the very nature of the functions performed by these officers, and from the fact that a transfer of the title from the United States to another owner follows their favorable action, it must result that at some stage or other of the proceedings their authority in the matter ceases. It is equally clear that this period is, at the latest, precisely when the last act in the series essential to the transfer has been performed; or, so to speak, in technical language, the legal title has passed from the govern-

Miller vs. Donahue.

ment, and the power of these officers to deal with it has also passed away. The fact that the evidence of this transfer of title remains in the possession of the land officers cannot restore the title to the United States or defeat that of the grantee, any more than the burning up of a man's title deeds destroys his title. . . . The acts of congress provide for the recording of all patents for land in one office, and in books kept for that purpose. An officer, called the Recorder, is appointed to make and to keep these records. He is required to record every patent before it is issued, and to countersign the instrument to be delivered to the grantee. This, then, is the final record of the transaction — the legally prescribed act which completes what Blackstone calls ' title by record;' and when this is done, the grantee is invested with title. . . . When all that we have mentioned has been consciously and purposely done by each officer engaged in it, and where these officers have been acting within the scope of their duties, the legal title to the land passes to the grantee, and with it the right to the possession of the patent. No further authority to consider the patentee's case remains in the land office. No right to consider whether *he ought in equity, or on new information,* to have the title or to receive the patent. There remains the duty, simply ministerial, to deliver the patent to the owner."

The case of *Bell v. Hearne,* 19 How. 252–262, was one where the error in the Christian name of the patentee was corrected, from James to John, and the mistake was shown by the record, and the court said of it: "The power exercised in this case is a power to correct a clerical mistake, the existence of which is *shown plainly by the record,* and is a necessary power in the administration of every department." *Marsh v. Nichols, Shepard & Co.* 128 U. S. 614. And the case is clearly distinguishable from the present, where the record does not show any mistake, and where the action of the department subverts and cancels a patent absolutely.

Miller vs. Donahue.

"If such a power exists [as was asked by Mr. Justice MILLER in *Moore v. Robbins*, 96 U. S. 534], when does it cease? There is no statute of limitations against the government; and, if this right to reconsider and annul a patent after it has once become perfect exists in the executive department, it can be exercised at any time, however remote. It is needless to pursue the subject further. The existence of any such power in the land department is utterly inconsistent with the universal principles on which the right of private property is founded."

We have felt at liberty to quote quite extensively from the case of *U. S. v. Schurz*, because, in our judgment, it is absolutely decisive of this controversy, and the doctrine there laid down is fully sustained by subsequent decisions. *Hardin v. Jordan*, 140 U. S. 401; *Noble v. U. R. L. R. Co.* 147 U. S. 176; *In re Emblen*, 161 U. S. 52, 56; *U. S. v. Marshall Silver Mining Co.* 129 U. S. 587, 588; *Iron Silver Mining Co. v. Campbell*, 135 U. S. 301. The case of *Reynolds v. Plymouth Co.* 55 Iowa, 90, was one where it was held that the party making the entry acquired no title or equity, for the reason that the scrip used in making it was forged and counterfeit.

It is clear, we think, that, by the entry and issuing of the patent, the lands therein described were segregated from the public domain, and were no longer subject to entry or disposition under the general land laws, and that the title thereto was vested in Hiram S. Allen. The land department could not deal with the land in any way whatever until the patent should be canceled, at the suit of the United States, by a bill in equity. It became in 1854, when the patent was issued, and has ever since so remained, subject to the laws of the state in relation to taxation, and to sale and conveyance in case of nonpayment of the taxes assessed thereon. The act of the department in canceling the patent, and in setting aside the entry, after it had been carried into

and merged in the patent itself, was a nullity.  This court has recognized the principle to be that "whenever the question in any court, state or federal, is whether a title to land which had once been the property of the United States has passed, that question must be resolved by the laws of the United States; but that whenever, according to those laws, the title shall have passed, then that property, like all other property in the state, is subject to the state legislation, so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States." *Paige v. Peters,* 70 Wis. 182; *Wilcox v. Jackson,* 13 Pet. 516, 517.

The proceeding by which the patent in this case was canceled for mistake, without notice of any kind to the plaintiff, who acquired or claimed to have acquired the title by tax deeds to the land, and who was interested in contesting the question of whether any mistake had occurred, but was not cited before the land department in relation to it, is without authority of law.  He was entitled to litigate the question of mistake before a competent tribunal, upon notice and proper allegations.  It seems preposterous to say that the record made up in his absence, by the commissioner of the general land office, in the case before us, upon *ex parte* affidavits, can bind or affect his rights in the least degree, or be received as evidence to show that the alleged mistake in the entry in fact occurred.  Aside from the letter of the commissioner of the general land office, the evidence tending to show such mistake consists of the fact that Allen, some years after the entry, recorded the certificate, and also executed and delivered to a third party a warranty deed of the *S. W.* $\frac{1}{4}$ of the section, which, it is claimed, he applied in fact to enter; but this evidence is unsatisfactory and insufficient.  The general doctrine is that when, in a court of equity, it is proposed to set aside or annul or correct a written instrument for fraud or mistake in the execu-

tion of the instrument itself, the testimony upon which this is done must be clear, unequivocal, and convincing, and that it cannot be done on a bare preponderance of evidence, which leaves the matter in doubt. The rule is well settled that where the attempt is to annul or avoid grants, patents, or other solemn evidences of title, emanating from the government of the United States under its official seal, the great importance and necessity of the stability of titles demands that the effort to set them aside, annul or avoid them, or to correct mistakes in them, shall only be successful when the evidence is clear, strong, and satisfactory. *Maxwell Land-Grant Case*, 121 U. S. 379–381; *U. S. v. Des Moines Nav. & R. Co.* 142 U. S. 541; *U. S. v. Budd*, 144 U. S. 161. There is, in our judgment, no legal or competent evidence in the case sufficient to sustain the contention upon which the defendant relies, that, by reason of the alleged mistake, the lands in question never became taxable.

For these reasons, we hold that the patent to the land in question is, and has been, in full force and effect, and the land has been taxable, ever since the patent was issued, December 15, 1854.

The contention that the second tax deed was void because Woodward, the grantee therein, was a tenant in common with his co-grantee in the first tax deed, is not maintainable. The land had been sold in both instances to the county, and the tax deeds were issued to its respective assignees. It does not appear when Woodward acquired the tax certificate upon which he took his tax deed, nor that, when he acquired it, he was under any obligation, legal or equitable, to pay the taxes on account of which the sale was made, mentioned in the first tax deed, to Putnam and Woodward, or that he was then tenant in common with Putnam; nor does it appear that Putnam, or any one claiming under or in privity with him, is making any objection to the validity of the tax deed to Woodward.

Miller vs. Donahue.

Other objections were made to the tax deeds, but they do not seem to require special attention. The circuit court, we think, erred in holding that the land did not become taxable.

*By the Court.*— The judgment of the circuit court for Chippewa county is reversed, and the cause is remanded with directions to render judgment as prayed for, in favor of the plaintiff, with nominal damages.

WINSLOW, J. In my judgment, the findings of fact are amply sustained by the evidence. The fact was that Allen, in 1854, purchased and duly entered the S. W. ¼ section, and received and recorded the proper duplicate receipt upon such entry, which receipt described said S. W. ¼. Neither he nor any one else ever purchased or entered, or tried to purchase or enter, the S. E. ¼ section, but a mistake was made in the land office at La Crosse, by which the entries in the books indicated that the S. E. ¼ section had been entered by Allen, and a patent was by mistake executed for said S. E. ¼, but never delivered to Allen. These errors seem never to have been known to Allen. Under these circumstances, the simple question is whether the S. E. ¼ became taxable by the state.

Certainly, the *S. W.* ¼ had become taxable, because it had been entered and paid for. The issuance of a patent was not essential. *Ross v. Outagamie,* 12 Wis. 29; *Railway Co. v. Prescott,* 16 Wall. 603. Only one quarter section had been sold, and hence only one became taxable, and that one was clearly the S. W. ¼. To hold that the S. E. ¼ was also taxable would be to hold that a whole half section had become subject to taxation, notwithstanding the fact that but one quarter section had been sold. This seems to me almost, if not quite, absurd.

There are no questions here of *bona fide* purchasers. The state could not tax lands which were owned by the United

States. A tax-title claimant buys at his peril. He is not a *bona fide* purchaser. He gets nothing unless the state had legal power to tax the property. The question is whether the property belonged to Allen when it was taxed. If it did not belong to Allen, then it belonged to the United States, notwithstanding the erroneous patent, and was not taxable. The question whether it belonged to Allen or to the United States is the key to the whole problem, and it must necessarily be decided as though it arose between Allen and the United States, because neither the state nor the tax-title claimant is entitled to urge *bona fides* or estoppel. As between Allen and the United States, Allen owned only one quarter section, and that was the S. W. $\frac{1}{4}$; and it necessarily follows that the title, *i. e.* the entire beneficial interest, in the *S. E.* $\frac{1}{4}$ remained in the United States, and hence was never taxable. *Reynolds v. Plymouth Co.* 55 Iowa, 90.

In my opinion the judgment should be affirmed.

MARSHALL, J., took no part.