King, J.,
delivered the opinion of the court.
This action was brought by the town of Manitou, a municipal corporation, in ejectment to oust the defendants from and to obtain possession of real estate described in the petition as “the east two-thirds of the famous scenic rock commonly known as the “Balanced-Rock,” and the west half of the famous scenic rock commonly known as the “Steamboat Rock,” and a strip of land adjoining the last named rock upon which is situated a one-story frame building, all of which was alleged to be within the boundary lines of, and a part of, a certain public street of the plaintiff commonly known as the Garden of the Gods road, alleged to be sixty feet wide, thirty feet of which lay on each side of the center line of the said street, to which plaintiff claimed title in fee simple, and all of which was in the possession of the defendants, who are alleged to wrongfully and unlawfully withhold the same. All the allegations of the complaint, except defendants’ possession, were put in issue by the answer, *484 in addition to which affirmative allegations were made, in the nature of new matter, assigning equitable reasons why the plaintiff should be estopped from claiming possession of the roadway, or of the rocks, or of improvements placed upon said premises by the defendants, or their grantors. Defendants prayed for affirmative relief.
Upon verdict of a jury, the decree of the court was rendered in favor of the plaintiff, adjudging that it was the owner in fee of all the said premises described as heretofore, and entitled to possession thereof.
The court submitted the case to the jury upon instructions which required them to find for the plaintiff if they found from the evidence, either that the road had been established by the board of county commissioners, substantially in compliance with the law at that time in force, or if they found that the road had-been used as such by the public uninterruptedly for a period of twenty years or more, and that if under either theory they should determine that a road had been established, such roadway must be held to be sixty feet in width, thirty feet on each side of the center line; and if the premises described in the complaint were within this sixty-foot strip, the plaintiff would be entitled to a verdict. In so instructing the jury, we think the court erred, for reasons which we shall state hereafter.
1. Plaintiff attempted to show that the roadway in dispute was laid out by valid action of the board of county commissioners, and also to show a road by user, and in so doing introduced certain records of the board of county commissioners pertaining to a road through the Garden of the Gods. These records were first identified by Irving ITowbert, who was the county clerk, and clerk of the board of county commissioners at the time the proceedings of the board of county commissioners were-had. The petition for the road was not offered. The records offered and received were from the minutes of *485 the board, as follows: (1) An order of the connty commissioners dated Jnne 12, 1873, reciting that:
“The petition of Young, Wilson, Gatchell and others, asking that a connty road be laid ont, running from a point on the county road in Section 27, Town. 13, Eange 67, through the Garden of the Gods to a point on the county road near Yon Hagen’s west line, was then read. The commissioners present having examined said proposed road, ’ and having received assurance from the parties interested that they would open said road at their own expense, and would pay all damages that might be assessed by reason of the location thereof, and all expenses of viewing, surveying and locating said road, therefore it was decided by the board to appoint viewers to locate said road. And on motion it was ordered that Henry Burr, F. E. Eoberts and John Wolfe be and are hereby appointed viewers to view, and locate the road prayed for by Young, Wilson, Gatchell and others, and to assess any damages that may accrue to the owner of any lands over which said road may pass; and June 21st, 1873, be set apart as the day of their meeting for such purpose, and that said viewers report to the Board at the next meeting. ’ ’
(2) An order made June 28, 1873, reciting- that the board then heard the report of the viewers appointed at the last meeting to view and locate the county road as prayed for by Young, Wilson and others, the report being as follows:
“To the Honorable Board of County Commissioners of El Paso County, Colorado: The undersigned viewers appointed to view the road from near Manitou through the Garden of the Gods to Camp Creek, would report that they have completed their duty and located the road as laid down on the accompanying plat, and find that the property through which it runs is benefited more than *486 it is injured, and therefore.do not find any damages due to anyone by reason of the location of said road.” ■
(3) An order of the board in the following language :
‘ ‘ On motion the said report was received, and it was ordered that said report, and the plat accompanying the same, be placed on file. Thereupon the Board ordered that the road running from near Manitou through the Garden of the Gods to Camp Creek, as located and platted by the viewers aforesaid, be and the same is hereby declared a county road.”
The plat could not be found, and neither ITowbert nor the county clerk at the time of the hearing could give any account of it.
From this statement it will be observed that there was nothing in the records from which the road attempted to be laid out could be identified, neither termini nor general course being given. Nor does it appear that the road located was the road petitioned for. There is no' similarity in the description except for the words “through the Garden of the Gods.” Therefore, plaintiff was compelled to attempt to identify the road which the county commissioners had tried to lay out with the road in litigation, by evidence aliunde the record. We think it failed. Mr. Howbert, Henry McAllister and others who resided in the county in 1873 and subsequently, testified that a roadway which the county commissioners took over (presumably by the order quoted) was then being built and was later completed, so far as it was completed at all, by a private company; that it ran between Balanced Rock and Steamboat Rock, and from thence to or in the direction of the inhabited portion of the town of Manitou, at that time unincorporated. There the identification ended. But neither at that timé nor at the time of the trial was any platted portion of said town or addition thereto nearer than a quarter of a mile of said rocks, *487 and there is nothing to show that the town of Manitou had platted said road as a street, or adopted it as a street, or recognized it as such, except by doing some work thereon from time to time, as also did the county and private individuals. The land of the defendants was included within the corporate limits of the town of Manitou when incorporated in 1876, and we assume that after that time the town, for the public, had all such rights therein as the county had acquired.
If the proof made is sufficient to show a road established by the act of the county commissioners in 1873, and to identify it as the road involved herein, it might be held, in the absence of an order of the board of county commissioners, fixing a different width, that the road so laid out was sixty feet in width, which would seriously complicate matters with respect to the rights of the parties to the possession of the scenic rocks, which are in fact the subject of the controversy, however that fact may be veiled. The action is in ejectment, and the plaintiff must rely upon the strength of its own title, and must establish it by sufficient proof. In doing this it had to rely, and did rely, upon certain proceedings of the board of county commissioners while acting in a judicial capacity.
Boards of county commissioners when engaged in hearing matters respecting the opening of roads and streets, and assessing benefits and damages, are exercising judicial functions, and are regarded as courts of special and limited jurisdiction. — Elliott on Roads & Streets (2d Ed.), secs. 272, 284; Doctor v. Hartman, 74 Ind., 221; Stone v. Augusta, 46 Me., 127; Chicago, etc., Co. v. Chamberlain, 84 Ill., 333; Northern P. T. Co. v. Portland, 14 Or., 24,. 13 Pac., 705. And the weight of authority is that the jurisdiction of such tribunals must appear on the face of the record, both as to jurisdiction of the subject-matter and of the persons of those whose *488 land is sought to be appropriated. — People v. Brown, 23 Colo., 425, 48 Pac., 661; State v. Hemsley, 59 N. J. Law, 149, 35 Atl., 795; Elliott on Roads & Streets, sec. 285.
There is a diversity of opinion as to whether plaintiff, in relying upon a road by statutory proceedings, must prove the jurisdiction of the 'board, or whether, upon a showing'of an order locating and declaring a road open, the burden of showing that jurisdiction was not obtained is upon the person asserting the invalidity of the judgment. But it is our opinion that in this state the burden of showing jurisdiction is, and ought to be, on the plaintiff. In People v. Brown, supra, it is said:
“The board of county commissioners has but a limited and special jurisdiction, and as there is no presumption in favor of the regularity of its proceedings, its records must affirmatively show the necessary jurisdictional facts in support of its action.” (Italics ours.)
And the ruling of the court of appeals in Thatcher v. Crisman, 6 Colo. App., 49, 39 Pac., 887, was to the same effect as to the necessity of an affirmative showing that the board obtained jurisdiction, or the presumption of validity would not be indulged. A strong statement of the same rule is found in Oliphant v. Commissioners of Atchison County, 18 Kansas, 386, 398, in an opinion by Mr. Justice Brewer, in which it was said:
“There is no presumption, in favor of tribunals of limited and special jurisdiction, of the existence of facts outside of those named in the record. A party asserting their existence must prove them, or the case will stand as though they did not exist.”
Further along in this opinion the court said:
“This record fails to show that the petitioners were householders. Prima facie it shows 'that the county board had no jurisdiction, and that the proceedings were void. There is no finding that the petitioners were householders, none that a sufficient petition was presented, and no facts *489 stated anywhere in the findings from which it can be inferred that a sufficient petition existed.”
By the decision of our supreme court in McLaughlin v. Reichenbach, 52 Colo., 437, 122 Pac., 47, and since that time by repeated decisions of this court, it has been held that where a judgment is relied on as an estoppel or as an adjudication, it must be accompanied by the judgment roll, in order to show that the court had jurisdiction both of the subject-matter and of the persons, and to identify the subject-matter as the same as that in litigation, and if the judgment roll as so offered fails to show jurisdiction of either subject-matter or person, or identity, there is a failure of proof; and if the judgment roll shows affirmatively a lack of jurisdiction, the judgment must be held void. — Fleming v. Howell, 22 Colo. App., 382, 125 Pac., 551; Terry v. Gibson, 23 Colo. App., 273, 128 Pac., 1127; Empire R. & C. Co. v. Gibson, 23 Colo. App., 344, 346, 129 Pac., 520; Empire R. & C. Co. v. Coleman, 23 Colo. App., 351, 353, 129 Pac., 522; Empire R. & C. Co. v. Battelle, 24 Colo. App., 375, 133 Pac., 1123; Empire R. & C. Co. v. Patterson, 24 Colo. App., 395, 122 Pac., 1125; Empire R. & C. Co. v. Lumelius, 24 Colo. App., 49, 131 Pac., 796, 797. If we follow the rule laid down in those cases, we must of necessity hold that the plaintiff in this case was required to show affirmatively the jurisdiction of the board of county commissioners, both of the subject-matter and the persons of the owners of the land, and the identity of the road; that if it failed in either, there was a failure of proof fatal to its cause of action based on that judgment, for undoubtedly it introduced the record of the board as an estoppel against the defendants, and as an adjudication of the ownership of the very rocks in controversy. There was a failure to prove jurisdiction of either the particular subject-matter or persons, by the record or otherwise, and an affirmative showing *490 by the record that jurisdiction of the persons of the land owners or holders was hot obtained.
The validity of the proceedings of the board must be determined by the laws of 1868, Rev. Stats. 1868, page 564, section 6, .which provides that when a petition shall be presented to the board of county commissioners of any county, praying for a public road to be laid out, signed by not less than ten of the householders of the county, designating the termini and general course of the road, and depositing the expenses of viewing the road, the board shall appoint a day for the hearing of the petition, and 'direct that some of the petitioners serve written notice upon every person residing upon any of the land across which it is proposed to lay the road, giving the substance of the petition, and the time assigned for the hearing, and that the clerk post like notice upon the door of his office, not less than ten days before the date of hearing; that upon the day set for the hearing, if the notices have been given, the service and posting of which is to be proven by affidavit of the person serving or posting the same, the commissioners shall proceed to hear the petition and any objections, and thereupon, if deemed necessary and expedient to locate the road, they shall appoint three disinterested householders as viewers to view and locate- the road, make a survey and plat, determine the expense of opening the road, and assess and fix the damages and benefits to the owner of lands over which the road shall be located, and the commissioners at the time of the appointment of such viewers must fix and publicly announce the day and place for the meeting of such viewers not less than ten days subsequent to the day of such appointment.
It may be presumed that some kind of a petition was filed, because the order of the board recites that a petition was filed; but that order failing to show, and being the only evidence of what was in the petition, the record *491 fails to show (and there is no evidence-to supplement it) the following matters required by the statute:
(a) That the petition was signed by ten householders of the county;
(b) the termini and general course of the road;
(c) that the board, upon the receipt of the petition, appointed a day for hearing the petition;
(d) that the board directed written notice to be served upon the land owners, or that any such notice was served:
(e) that the clerk posted like notice upon the door of his office for not less than ten days,.or for any time;
(f) that there ever was such a hearing;
(g) that the viewers appointed were householders, or disinterested;
(h) that the day fixed for the meeting of the viewers was publicly announced.
The record also affirmatively shows that the day fixed for meeting of the viewers was less than ten days subsequent to the day of such appointment, and therefore the notice required to be given neither was given nor could have been given; therefore we think there is not only a failure to show jurisdiction, but an affirmative showing in some respects that-the board failed to acquire jurisdiction either of the subject-matter or of the persons.
The final order establishing the road must be held to-be insufficient for that purpose. — Missouri Pac. Ry. Co. v. Atkinson, 23 Colo. App., 357, 129 Pac., 560; Cox v. Commissioners, 194 Ill., 355, 62 N. E., 791.
2. The evidence conclusively shows that a roadway was laid out in the summer of 1873 by a private company called the Colorado Springs Company of Manitou, which connected the town of Manitou with the Balanced Rock and other country beyond; that the road was built and finished so it could be traveled in June and July, or later during that summer; United States patent was *492 issued to the defendants’ grantor July 25, 1873, and it may be assumed that the land was in the possession of the patentee for a considerable period of time prior to that date, otherwise the patent could not have issued; this road was continuously used by the public from that time without objection shown until about 1892, or subsequently; that at all times the road passed between the Balanced Bock and Steamboat Bock; at first it was there very narrow and dangerous; one of the defendants went into possession of the land in 1890, and in 1892 one of' them obtained a lease from the owner, a resident of Holland, under contract to occupy it and improve the roadway between the two rocks, and from that time to the time of the suit this land was occupied by the defendants, first as tenants, afterwards under contract of purchase, and later as owners of'the fee; no change was made in the travel on the roadway at this immediate place except such as was made by the defendants in improving the road in the vicinity of and between the rocks for purposes of gain, and it must be held that a road by user for the prescriptive period, and for the width used, has been established.
Appellee contends that this prescriptive roadway must be held to be sixty feet in width (1) because that was the width fixed by statute in 1868 for all public roads unless otherwise ordered by the commissioners, and (2) that subsequent acts have declared that all roads (except private roads), either established regularly by the commissioners or recognized by them, or used for the prescriptive period, are public roads, and that all public roads, unless otherwise ordered, are sixty feet in width; section 2953 Gen. Laws of 1883, section 3928, Mills’ Ann. Stats., being particularly relied on. It reads as follows:
“All roads and highways except private roads, heretofore established in pursuance of any law of this state or the Territory of Colorado, and roads dedicated to *493 public use that have not been vacated or abandoned and such other roads as are now recognized and maintained by the corporate authorities of any county in this state, are hereby declared to be public highways:”
The appellee further contends that even if the order establishing the road was invalid, nevertheless it operated as color of title, and therefore the road for its entire width of sixty feet must be held to exist, whether by color of title or by prescription. The act of 1883 doés not, nor does any other like act, specifically express a purpose of curing any invalid action or records (Thatcher v. Crisman, 6 Colo. App., 49); nor, taken in connection with the statute fixing sixty feet as the width of public roads, can it be held to be effective to extend the width of the road in controversy beyond that established by adverse user; that is to say, the width actually used; for, in the first place, the statute does not purport to make valid what was theretofore invalid, and if its purpose was to increase the width of the prescriptive road, and take other lands of the owner, without compensation, it would be unconstitutional; and, further, being a part of an act concerning roads, which has no reference to city streets, it should not be held applicable to the present road within the corporate limits. The title to the entire width cannot be established by color of title furnished by the record, for there was no description by which a road of any dimensions can be identified; there was no paper title upon which color can be predicated.
3. Our conclusion is that a road, the width of which is not uniform, but necessarily restricted by the barriers consisting of the rocks mentioned, has been established by user. The evidence introduced shows beyond controversy that, conceding to the plaintiff the ownership of the roadway established.by user, no portion of the Balanced Bock or of the Steamboat Bock, or o.f the house mentioned in the pleadings, is within the roadway, all of *494 which, however, would be found within the roadway if given a width of sixty feet.
Everything tends to show that the effort of the plaintiff was not to obtain possession and control of-these two' valuable scenic rocks for road purposes, for they have never been used for road purposes, and could not be so used without destroying their scenic value, and destroying the most valuable asset connected with the defendant’s lands. If the city-wishes to obtain this property for park purposes, it should proceed to condemn it.
The evidence strongly tends to show that defendants, in denying to the plaintiff and to the public the free use of the limited roadway, through misconception of their rights, or through greed for gain, caused so much trouble to the traveling public and to the city as to bring about this suit. Some of their acts were probably reprehensible, but this cannot justify the court in depriving them of their property rights. 'Beginning with 1892, before the lapse of twenty years after the road was first used, they commenced, and have continuously pursued, a policy of improving this land; they have done extensive rock work upon the road, built a pavilion adjacent to Steamboat Rock at an expense of $3,000, built upon it an observatory for the use of the traveling public, built a pavilion at the southern extremity of their lands for the use of interurban passengers who wish to visit these scenic wonders, and all together have expended many thousands of dollars in cash and labor, the value of which would be almost entirely taken from them if the city should prevail. No objection was made by the city from 1892 to 1910, at or about The time the suit was begun, either to the occupation of these rocks or their improvement by the defendants. While there is a diversity in the authorities as to4 the presumption that should prevail as to the action of the board of county commissioners or of any other court, whether of general or of limited jurisdiction, after a *495 lapse of many years, we are fully persuaded that no doubtful presumptions should be indulged in for the purpose of holding this road valid under the proceedings of the board of county commissioners, of the full width of sixty feet, to the end that the city may despoil the defendants, Even after indulging all presumptions, we might still hold that the city’s rights would not extend to the control of these rocks, being limited to necessary use for road purposes, or we might hold that the city was equitably estopped'; but those questions present greater difficulties than we find in coming to the conclusion either that the action of the board of county commissioners was void, and therefore no rights attached, or that’the proof of the jurisdiction of the board was insufficient, and therefore the road can only be sustained by user, and limited to the width actually used, which could not have been extended to take in these rocks without destroying them.
The judgment is also erroneous in declaring that plaintiff was the owner of this property or any of it by unqualified fee. Whatever title it may be awarded should be qualified as held by the court in Lithgow v. Pearson, ante 70, 135 Pac., 759.
The defendants asked for affirmative relief against any other or further action based upon the alleged street. We think, under the pleadings, full settlement o.f the cause of litigation' may and should be made. The judgment is reversed and the cause remanded, with instructions to render judgment in favor of the defendants for the premises described in the complaint,. and in favor of the plaintiff, adjudging that it is the owner of a qualified fee to the easement, and entitled to the possession of a roadway or street, between Balanced' Bock and Steamboat Bock, not to exceed the width of the roadway as it existed at the time of the commencement of - this *496 suit, and in no event to include either of the rocks in question; and that appellants recover their costs.

Reversed and Remanded.