## St. Onge v. Day.

1. One who files a pre-emption claim upon government land, and afterwards proves up and gets the receiver's receipt, is vested with title thereto, which title relates back to the date of filing, from which time he can recover against a person using or trespassing upon said land.
2. The owner of land through which a railway company has the right of way, actually in use for railway purposes, cannot himself use such right of way, or recover for trespasses committed thereon by others; the railway company being entitled to the exclusive use thereof.

*Appeal from District Court of Chaffee County.*

This was an action against appellant by appellee for the use and occupation or rental value of certain land

from November 29, 1881, to the commencement of the action, being twenty-eight months, which was alleged to be of the value of $25 per month; and for trees and fences, of the value of about $70, alleged to have been taken by appellant from the land. In the year 1879 the land was a part of the public domain and unoccupied, except a right of way for the Denver, South Park & Pacific Railway thereon, two hundred feet in width, which had been granted by congress for said railway purposes, and which had been and then was accordingly occupied and used for railway purposes. In that year appellant went upon the land, and occupied about two acres thereof with wood-piles, charcoal kilns and cabins; a portion of the same being on the said right of way. Afterwards appellee made a pre-emption, filing upon the quarter section containing this land so occupied, and from which the said trees and fences were charged to have been taken. July 29, 1882, appellee proved up, paid and obtained receiver's receipt or certificate for the land, in which the said right of way was excepted and reserved. Subsequent to appellee's filing, appellant also filed upon the same quarter, and contested, in the land office, appellee's right to the said quarter. There was some conflict in the evidence about the cutting of the trees and taking of the fences; the question being whether the parties cutting and taking the same were acting for appellant and in his behalf. It also appears from the evidence that there had been some talk of a compromise between the parties, and there was the testimony of two witnesses that appellant had promised to pay rent for the land so occupied if appellee obtained receiver's receipt. However, appellant in his testimony denied the same. And there was testimony showing the rental value of the premises occupied as aforesaid, and what portion thereof was of the railway right of way. The charge to the jury was as follows: "(1) The receiver's receipt is sufficient to vest title in plaintiff to the land described therein, and this title

commenced at the time plaintiff first filed on the land in the land office, claiming it as a pre-emption, and it is immaterial for what purpose said land was filed on.  (2) If the jury believe from the evidence that defendant used and occupied any portion of the lands described in said receipt, or destroyed any fences thereon, or caused or directed to be cut or destroyed any trees growing thereon, then they should assess plaintiff's damages at such sum as the use and occupancy of such part of such premises were reasonably worth for the time occupied, and also such sum as the trees so cut or used, and the fence so destroyed, were reasonably worth.  (3) The plaintiff is entitled to recover, as aforesaid, for such use by defendant since the filing of his pre-emption claim, and also for such damage, aforesaid, as accrued since that time, but not for use had or damages done before such filing. (4) Form of verdict: The jury, after finding and assessing plaintiff's damages under the instructions heretofore given, will answer the following question: What damages is plaintiff entitled to recover under the instructions and evidence, without allowing him anything for use and occupancy of any portion of the premises included in said right of way, being one hundred feet on each side of central line of railway?" The jury found for the plaintiff, excluding railway right of way, in the sum of $210, and, including the same, in the sum of $560, and the court gave judgment for $560.

Messrs. Hartenstein and Sindlinger, for appellant.

Messrs. H. W. Hobson and Milton G. Cage, for appellee.

Stallcup, C.  It is argued here for appellant that the court erred in the charge to the jury, and erred in including in the judgment recovery for the use of the railway right of way.  Having entered the land and received the receiver's certificate, the title of appellee related back to

the date of his filing, and he had his action of trespass for any injury done his land in the meantime, or he could waive the trespass and sue and recover for use and occupation and the value of the timber cut and fences taken in the meantime. There was therefore no error in the instructions. The court erred in including in the judgment the value of the use and occupation of the railway right of way. The appellee had no right to occupy this right of way with wood-piles, coal-kilns and habitations. Neither could any one else so occupy it by right from him. It follows that appellee had no right of recovery for such occupation of this right of way. Upon this question, however, the authorities are not in entire harmony. A right of way for railway purposes, in its use, is necessarily more exclusive than a right of way of one farmer over the premises of his neighbor, or of the public in a highway. A grant of a certain number of feet over land for a right of way for railway purposes in the nature of things excludes other uses thereof, for the reason that other uses thereof cannot with safety be made adjustable therewith. According to the conception of congress (sec. 1, ch. 152, Supp. R. S.), this right of way was necessary, at least expedient and proper, for railway purposes, and was accordingly granted. In view of the great care and caution necessary to prevent fatal and destructive accidents in the operation of railways, a high degree of care and caution is required of those who control and operate the railways. In many of the states they are required to inclose such right of way with fences, so as to prevent the occupation thereof by anything else liable to cause accident or injury; and it must be apparent that such requirement is promotive of safety in the operation of railways. Where the railway right of way crosses other ways, there a double use is necessary, and there extraordinary care is required; and yet fatal collisions and accidents still occur at such places by reason of such additional use. A railway right of way,

as a general rule, necessarily carries with it an exclusive right for railway purposes, and necessarily excludes right in the owner of the fee to occupy the same with wood-piles, coal-kilns, and the like. The character of the occupation of the right of way, as stated, being conceded, it follows, as matter of law, that such occupation of the railway right of way was a trespass thereon, and unwarranted in reason and by the better authority. *Railway Co. v. Ward*, 4 Colo. 30; *Railroad Co. v. Potter*, 42 Vt. 265, 274; Mills, Em. Dom. §§ 208–210. Where the reason of the general rule announced does not exist, the rule of exclusive use for the railway does not apply, as in cases of a passage provided under the railway track for the use of the owner of the fee in passing to and from his lands, lying upon either side of the railway, when such passage thereunder is arranged so that, in such use of such passage, no conflict or interference with the use for railway purposes can occur. *Railway Co. v. Allen*, 22 Kan. 285, 293, 294. It should not be inferred from what has been said that the railway company has the right to burden the property with any other or different use than that for which it was granted or acquired.

The judgment should be reversed and the case remanded, with instructions to enter judgment according to the finding, excluding the railway right of way.

Rising, C., concurs.

De France, C. I concur in the conclusion to reverse, but dissent from the direction to enter judgment against appellant, and from the principle announced on the first branch of the case.

Per Curiam. For the reasons assigned in the foregoing opinion the judgment is reversed and the cause remanded to the district court, with instructions to enter judgment for the appellee, on the finding of the jury, for the sum of $210; the appellant to recover his costs in this court.                                        , *Reversed.*