William G. WALL and Patricia A. Wall, Plaintiffs–Appellants,

v.

CITY OF AURORA, a municipal corporation of the State of Colorado, Defendant–Appellee.

No. 05CA2456.

Colorado Court of Appeals, Div. I.

May 31, 2007.

Boyle/Apelman, P.C., Terence P. Boyle, Mark Apelman, Denver, Colorado, for Plaintiffs–Appellants.

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, Donald M. Ostrander, James Birch, Elizabeth D. Rubinstein, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge ROY.

In this post-condemnation lawsuit arising from a change in public use, plaintiffs, William G. Wall and Patricia A. Wall (collectively, the condemnees), appeal the trial court's summary judgment in favor of defendant, the City of Aurora (the condemnor). The condemnees argue that the trial court erred by granting summary judgment based on the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). We disagree and affirm.

The condemnees owned two land parcels in Aurora located at the northeast quadrant of the intersection of Alameda Avenue and Interstate 225 (I–225). Each parcel was approximately 300 feet by 300 feet, or 90,000 square feet. The condemnor decided to install an interchange by placing north and south entry and exit ramps from Alameda Avenue to I–225 on the east side of I–225. This design required a significant realignment of Abilene Street, which is located immediately east of, and parallel to, I–225. Abilene Street terminated approximately 600 feet north of Alameda Avenue at Cedar Street. There may have been means of getting from Cedar Street to Alameda Avenue, but if so, they were informal and, perhaps, on private land.

The proposed realignment required (1) Abilene Street to depart from its north-south

course approximately 1,100 feet north of Alameda Avenue and curve southeasterly to join Cedar Avenue approximately 200 feet west of the old intersection, necessitating the acquisition of approximately 18,680 square feet of the west side of the first parcel; and (2) the construction of a new segment of Abilene Street from Cedar Avenue to Alameda Avenue, necessitating the acquisition of approximately 17,320 square feet of the east side of the second parcel.

The condemnees and the condemnor entered into an agreement for immediate possession with respect to each parcel on August 10 and August 13, 1999, respectively. The agreements (1) entitled the condemnor to immediate possession of the property upon payment of a specified nonrefundable sum; (2) contemplated that a condemnation proceeding would be commenced if the parties could not agree on the ultimate consideration; and (3) stated that the acquired property would be valued as of the date that the condemnor took possession. The condemnor took immediate possession and realigned Abilene Street, thereby utilizing the acquired property.

On June 28, 2000, the condemnees commenced an inverse condemnation proceeding seeking just compensation for the value of the property taken including interest, attorney fees, and costs. On August 4, 2000, the condemnor commenced a proceeding in condemnation to obtain possession of, and title to, portions of the parcels. The stated public use for the condemnation was "the construction and maintenance of a highway interchange project at East Alameda Avenue and U.S. Interstate 225."

On April 4, 2001, the condemnor entered into a redevelopment agreement for the construction of a large shopping center and city center on land including the two parcels. Pursuant to the urban renewal project, the balance of the parcels was acquired by the Aurora Urban Renewal Authority (AURA) in a second condemnation proceeding; Abilene Street was again realigned; and the right-of-way acquired from the condemnees for the street from Cedar Avenue to Alameda Avenue was vacated; and the acquired property was, for the most part, converted to commercial uses. The second realignment of Abilene Street crossed the portions of the parcels retained by the condemnees until subsequently acquired by the AURA in the second condemnation proceeding.

A hearing to determine damages was held before a commission, which returned an assessment in favor of the condemnees on November 30, 2001, for $207,981. The court then issued a final order on January 28, 2002, in which it determined the amount owed to the condemnees with interest, and transferred title to the acquired property to the condemnor.

After discovering the change in use, the condemnees commenced this proceeding, claiming (1) taking without just compensation; (2) attorney fees pursuant to § 38-1-122, C.R.S.2006; and (3) exemplary damages. Specifically, they claimed that the condemnor misrepresented its intended use for the property initially acquired and thereby acquired it at pre-interchange prices, or that the condemnor was under a continuing obligation to disclose any intended change in use until January 28, 2002, when the condemnor obtained title. In addition, they argued that the road or street constructed on the initially acquired property was a construction road, not a public street. They sought, among other things, the difference between pre- and post-interchange values with interest.

The condemnor moved for summary judgment, arguing claim preclusion, issue preclusion, governmental immunity, and the statute of limitations. The trial court granted the motion on the basis of claim preclusion and issue preclusion, noting that the issue of just compensation had previously been litigated in the condemnation proceedings. This appeal followed.

Summary judgment is appropriate when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party. *Cung La v. State Farm Auto. Ins. Co.,*

830 P.2d 1007, 1009 (Colo.1992). We review a grant of summary judgment de novo. *Vail/Arrowhead, Inc. v. Dist. Court,* 954 P.2d 608, 611 (Colo.1998).

■ The doctrine of claim preclusion operates as a bar to a second action on the same claim as one litigated in a prior proceeding when there is (1) finality of the first judgment; (2) identity of subject matter; (3) identity of claims for relief; and (4) identity of or privity between parties to the actions. *Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.,* 109 P.3d 604, 608 (Colo.2005). Claim preclusion serves the dual purpose of protecting litigants from the burden of relitigating the same issue with the same party or his or her privy and of promoting judicial economy by preventing needless litigation. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Claim preclusion bars not only the claims actually litigated in the first proceeding, but also those that could have been litigated. *Lobato v. Taylor,* 70 P.3d 1152, 1165 (Colo. 2003).

■ Issue preclusion prohibits the relitigation of issues actually litigated in the first proceeding. Issue preclusion applies when (1) the issue in the second proceeding is identical to an issue actually and necessarily adjudicated in a prior proceeding; (2) the party against whom estoppel is asserted was a party or in privity with a party in the prior proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *City & County of Denver v. Block 173 Assocs.,* 814 P.2d 824, 831 (Colo. 1991). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1980).

Here, it is undisputed that there was identity of parties and a final judgment in the condemnation proceedings. Therefore, the only remaining issues are whether there was identity of subject matter and identity of claims for relief; and whether the issue was identical to an issue actually and necessarily adjudicated at a prior proceeding in which the condemnees had a full and fair opportunity to litigate the issue.

■ A taking of property occurs "when government action directly interferes with or substantially disturbs the owner's use and enjoyment of the property." *Black's Law Dictionary* 1493 (8th ed.2004). This includes a legal interference with the physical use, possession, enjoyment, or disposition of property, or acts that translate to a governmental entity's exercise of dominion and control. *Pub. Serv. Co. v. Van Wyk,* 27 P.3d 377, 386–87 (Colo.2001). In the event condemnation proceedings are commenced before the government interferes with the condemnees' use and enjoyment of the property to be acquired, the taking or damage occurs contemporaneously with the institution of the condemnation proceedings. *City of Northglenn v. Grynberg,* 846 P.2d 175, 186 (Colo.1993).

Accordingly, just compensation is determined as of the date the petitioner is authorized by agreement, stipulation, or court order to take possession and cannot include any increment arising from the very fact of acquisition or the intended use of the subject property. Section 38–1–114(2)(a), C.R.S.2006; *Williams v. City & County of Denver,* 147 Colo. 195, 199–200, 363 P.2d 171, 174 (1961).

Pursuant to § 38–1–102(1), C.R.S.2006, a party wishing to initiate eminent domain proceedings must file a petition in district court that includes "the purpose for which said property is sought to be taken." This statement of purpose ensures that the burden on the landowner can be accurately evaluated. *Bear Creek Dev. Corp. v. Genesee Found.,* 919 P.2d 948, 954 (Colo.App.1996).

■ It is undisputed that a condemnor has the right to devote condemned property to the purpose for which it was acquired. In addition, a condemnor may use condemned property for a different purpose, so long as the original purpose was valid at the time of the taking. As explained by the Ninth Circuit:

Because a sovereign body plans to acquire private property for a lawful purpose ..., does acquire the property with such purpose, and thereafter changes its corporate mind and uses the property for a different purpose, or even trades or sells the property to another, and at an increased price, does not thereby establish a taking for private use, for fraud, nor any fraudulent or false or untrue representations. Need for taking the particular land, like the issue of compensation for the taking, is judged solely by the conditions existing at the time of the taking.

*Beistline v. City of San Diego,* 256 F.2d 421, 424 (9th Cir.1958).

■ Here, the parties stipulated that August 10 and 13, 1999 were the dates on which the condemned properties were taken and were to be valued. Except for the condemnees' assertion that a construction road was built on the acquired property, it is essentially not disputed that the property was, initially, used for a highway interchange project and the relocation of Abilene Street. Nor have the condemnees presented any evidence that the condemnor, at the time of the taking, had a different intended use for the property acquired.

We recognize that the condemnor's change in use immediately following the final order of possession and transfer of title might raise concerns that the condemnor was not acting in good faith throughout the proceedings. However, because a condemnor is authorized to use property for a different purpose after a taking has occurred, a taking occurs when the condemnor damages or takes possession of the property, and just compensation cannot include any increment arising from the very fact of acquisition of the subject property, the condemnees' arguments are legally insufficient.

Therefore, we conclude that the issue of damages for the taking of the acquired property was actually and necessarily adjudicated in the prior condemnation proceeding where the condemnees had a full and fair opportunity to litigate. Accordingly, as the trial court correctly concluded, the doctrines of claim preclusion and issue preclusion apply, and the condemnees cannot now revisit the valuation of the property acquired.

Given our conclusion, we need not address the condemnees' claims for attorney fees pursuant to § 38–1–122 and for exemplary damages, *See* § 13–21–102, C.R.S.2006. Nor will we address the condemnees' final argument, that the trial court erred by granting the condemnor's motion to bifurcate, as our disposition renders that issue moot.

The judgment is affirmed.

Judge MÁRQUEZ and Judge FURMAN concur.