**STEAMBOAT LAKE WATER AND SANITATION DISTRICT, a special district of government under the laws of the State of Colorado, Petitioner–Appellee,**

v.

**Vance E. HALVORSON and Sharon L. Halvorson, Respondents–Appellants.**

No. 09CA2393.

Colorado Court of Appeals, Div. VII.

Jan. 6, 2011.

Klauzer & Tremaine, LLC, J. Richard Tremaine, Steamboat Springs, Colorado, for Petitioner–Appellee.

Vance E. Halvorson, Steamboat Springs, Colorado, for Respondents–Appellants.

Opinion by Chief Judge DAVIDSON.

The primary question presented in this appeal is the nature of the title a water and sanitation district obtained when it condemned an entire parcel of land pursuant to its eminent domain powers. Respondents, Vance E. Halvorson and Sharon L. Halvorson, challenge the trial court's order describing the title as an absolute fee "free of all rights of reversion or reversionary interests, including but not limited to the possibility of reverter and rights of entry for conditions broken." They argue that this description of the title is erroneous because petitioner, Steamboat Lake Water and Sanitation District (the District), was only empowered to condemn a defeasible fee interest that excluded mineral, oil, and gas interests. The Halvorsons contend they still own a remainder interest in their land, which consists of the mineral, oil, and gas interests and either a reversionary interest or a right of entry for condition broken if the District ever abandons the property or attempts to sell it to a private party. They further contend they are entitled to statutory attorney fees. We conclude the appeal must be dismissed as to their first contention, disagree with their remaining contentions, and affirm.

## I. Background

The Halvorsons owned certain real property, located within the District's boundaries and known as Lot 78. Pursuant to a deed that pre-dated the Halvorsons' ownership, Lot 78 was subject to a water well easement of approximately 0.05 acres (of the lot's 0.62 acres) along its only side that fronts a public road. Located on the easement was an unused test well, a sewer pump station, and a driveway used by the Halvorsons to access the back portion of the lot, which they used for camping but is suitable for a residential building.

In 2007, the District drilled a new test well and situated its well head such that it was within the easement boundaries but blocked the driveway the Halvorsons used for access. The Halvorsons filed suit, alleging that the District's agents had trespassed upon and damaged the non-easement portion of the lot during construction, had misused the easement by unreasonably locating the new well head in the driveway, and had abandoned the easement.

While the trespass case was pending, the District determined that it needed to develop the well on Lot 78 to ensure sufficient water supply to its residents and that to do so, it needed to construct a water treatment plant on the lot. In mid–August 2008, the District offered to purchase Lot 78 in exchange for $87,300, conditioned upon dismissal of the trespass case. The Halvorsons rejected the offer, and the District filed its condemnation action and additionally requested immediate possession of the lot.

In briefs and at the possession hearing, the Halvorsons argued that the District was attempting to take land in excess of its needs and also argued that, regardless, the District was only empowered to take a defeasible fee. The court refused to consider the latter argument on the ground that it was premature. Accordingly, the parties' respective experts offered their opinions as to the fair market value of an unencumbered fee simple interest in Lot 78. The court accepted the District's evidence that it needed all of Lot 78 because the entire project could then be contained on one lot, because the project would likely destroy or impede access to the back of the lot, and because the District needed year-round access and, therefore, additional space for snow storage. The court also concluded that the District required immediate possession of

Lot 78 to take advantage of the short construction season in northern Colorado. The Halvorsons do not dispute these findings on appeal.

The court concluded that the higher end of the reasonable value of the lot was $90,000, and ordered that the District could take possession of it immediately upon depositing that amount with the clerk of court. After trial held in October 2009, the jury valued Lot 78 at $90,000 and awarded interest. The court then entered the order granting absolute fee simple title to the District that forms the basis of this appeal. The Halvorsons have already withdrawn the $90,000 bond deposited by the District.

## II. Motion to Dismiss

As a threshold matter, we address the District's motion to dismiss the appeal because the Halvorsons accepted the benefits of the judgment by withdrawing the $90,000 bond.

■ A person who accepts the benefits of a judgment may not seek reversal of that judgment on appeal. *See State Dep't of Highways v. Casteel,* 781 P.2d 108, 110 (Colo. App.1989) *(Casteel ).* The eminent domain statute, section 38–1–111, C.R.S.2010, codifies this common law rule. *Id.* at 110 ("the statutory provisions relative to appeal are, in our view, basically a codification of the common law rule"). It provides that "[i]n cases in which compensation is ascertained," if the owner prosecutes an appeal, the petitioner may take possession of the property while the appeal is pending upon paying the valuation judgment to the court, and that if the owner elects to receive that money "before the determination of said appeal, the appeal shall thereupon be dismissed."

The District argues that because the Halvorsons have already withdrawn the $90,000 bond, we must dismiss their appeal. We agree in part.

### A. Statutory Codification of Common Law

We acknowledge that section 38–1–111 states that, when the deposited money is withdrawn, the owner's appeal *shall* be dismissed. However, despite the mandatory nature of the term, we do not read the statute to bar every appeal without exception.

As stated, section 38–1–111 codifies the common law rule that one may not both accept the benefits of a judgment and seek its reversal on appeal. *See Casteel,* 781 P.2d at 110. Indeed, since its enactment in 1877, it has not been interpreted as different from, or more stringent than, that rule, and the available history of the statute reflects no legislative intent to the contrary. *Cf. Vaughan v. McMinn,* 945 P.2d 404, 408 (Colo.1997) (if legislature wishes to change common law, it must manifest its intent expressly or by clear implication). Thus, for example, the statute was interpreted to permit the withdrawal of funds without dismissal of the appeal under limited equitable circumstances. *Compare Colorado Mountain Properties, Inc. v. Heineman,* 860 P.2d 1388, 1391 (Colo.App.1993) (owner who inadvertently withdrew full amount of valuation judgment, despite appealing a $100 portion of judgment, allowed to proceed), *with Casteel,* 781 P.2d at 110 (by accepting the full amount of what was judicially determined to be just compensation, owner accepted the benefits of the judgment and lost the right to appeal the issue of property value).

Further, the plain language of section 38–1–111 limits its effect to "cases in which compensation is ascertained," that is, those cases in which the appeal could in some way affect the ascertained amount of compensation. Indeed, courts applying the statute have repeatedly noted that, typically, the only contested matter (and, thus, the only matter appealed) in an eminent domain proceeding is the amount of compensation required. *See Denver & New Orleans R.R. Co. v. Jackson,* 6 Colo. 340, 342 (Colo.1882) (principal object in proceedings is to determine amount of compensation); *Broadmoor Land Co. v. Curr,* 133 F. 37, 38 (8th Cir.1904) (applying Colorado law) (ordinarily, the only matter contested in eminent domain proceeding is the amount of compensation to be paid).

Accordingly, we read section 38–1–111 in light of the common law rule and, therefore, understand its language as prohibiting a par-

ty from both accepting the benefits of a judgment and prosecuting an appeal, but not when the adjudication of that appeal would not put in issue the party's right to the entirety of the benefit he has accepted. We conclude that the withdrawal of the bond precludes the Halvorsons from challenging the title description's failure to exclude gas, oil, and mineral interests. However, we conclude they may appeal whether the interest passed was a defeasible or absolute fee.

### B. Oil, Gas, and Mineral Interests

■ We note, initially, that the Halvorsons presented no evidence that they are the owners of any oil, gas, or mineral deposits below the surface of Lot 78 and, thus, arguably lack standing to raise any issue concerning those interests. *See* C.R.C.P. 17. In any event, we agree with the District that one generally cannot dispute the nature of an interest in property without also disputing its value. Thus, here, even if the Halvorsons had standing to raise the issue, because oil, gas, and mineral interests indisputably have some market value, *see generally Keith v. Kinney*, 140 P.3d 141 (Colo.App.2005), we agree that that portion of the appeal must be dismissed.

### C. Reversionary Interest

■ However, we conclude that the Halvorsons' asserted reversionary interest or right of reentry has no market value. Thus, because the Halvorsons' appeal as to that issue does not concern and will not affect the amount of compensation awarded, we decline the District's request that we dismiss that portion of the appeal.

■ The measure of valuation for compensation in an eminent domain proceeding is the *"fair market value"* of *"the loss suffered* by reason of the taking." *Palizzi v. City of Brighton*, 228 P.3d 957, 962 (Colo. 2010) (emphasis added). When a public entity takes part of a parcel of land, the court determines the value of the landowner's loss by determining the difference between the fair market value of the entire property prior to condemnation and the fair market value of the owner's remaining interest after condemnation. *See Montgomery Ward & Co. v. City*

*of Sterling*, 185 Colo. 238, 244, 523 P.2d 465, 469 (1974) (as first step in determining how to apportion condemnation award between fee owner and lessor).

The District argues that, because it paid for an absolute fee simple interest, that is what it now owns. However, the measure of compensation is not what the District gained, but what the Halvorsons lost: the $90,000 value of absolute fee simple title to the property, less the market value of the remainder interest, if any. The amount of compensation required would be unaffected by any such remainder interest here, however, because we conclude that interest has no market value. We reach this conclusion for the following reasons:

■ First, we note that a taking must be valued based on the rights acquired at the time, not the condemnor's speculative future use (or abandonment) of those rights. *Dep't of Highways v. Schulhoff*, 167 Colo. 72, 75, 445 P.2d 402, 404 (1968) (speculative or prospective values are not admissible in valuation proceeding).

■ Second, when a condemnor acquires perpetual use of the surface of land at all times and to the exclusion of the landowner, the remainder in the landowner, we observe, is for all practical purposes of no value. Here, it is undisputed that the Halvorsons have no present practical interest in Lot 78; they cannot enter upon it or otherwise use it. Further, we presume from the fact that the interest is completely unusable that there is no ready market for a reversionary interest or right of entry that may never vest. *See* 4 Nichols, *Law of Eminent Domain* § 12C.01[1] (3d ed. 2009) (in defining property that is without ascertainable market value, noting it would be "almost impossible" to find a buyer for a fee interest in land underlying a public street).

■ Third, when a property to be condemned is held in defeasible fee subject to such a reversionary interest or right of entry, it is generally accepted that the entire award goes to the owner of the fee interest and the owner of the reversionary interest or right of entry receives nothing. *See, e.g., Midwest-*

*ern Devs., Inc. v. City of Tulsa*, 374 F.2d 683, 688 (10th Cir.1967) (the general rule for condemnation of land held in defeasible fee simple is that the entire award is apportionable to the fee owner, and the owner of the right of entry or possibility of reverter is entitled to nominal damages only); *First Reformed Dutch Church v. Croswell*, 210 A.D. 294, 206 N.Y.S. 132 (1924) (possibility of reverter in land given to church for so long as kept and used as a church had no value capable of estimate); Nichols, §§ 12D.01[2][f], 12D.03[6].

Thus, because we may not speculate as to the District's possible future use or abandonment of the property, and because, even if the Halvorsons remain vested in a reversionary interest, they cannot presently enter upon it, use it, sell it, or receive compensation for it in an eminent domain proceeding, we conclude as a matter of law that it has no market value. *Accord North Carolina State Highway v. Black*, 239 N.C. 198, 79 S.E.2d 778, 783–84 (1954) (highway department that acquired a perpetual easement over a strip of land was required to pay owners the full value of the fee even though the interest was subject to reversion upon abandonment). Accordingly, here, because the Halvorsons' success on the merits would not affect the amount of the award, the withdrawal of the $90,000 bond is not inconsistent with prosecution of the appeal under section 38–1–111.

### III.   Standard of Review

■ In appeals from condemnation proceedings, we review the trial court's factual findings for clear error and its legal conclusions de novo. *Sinclair Transp. Co. v. Sandberg*, 228 P.3d 198, 202 (Colo.App.2009) (*cert. granted* Apr. 12, 2010) (citing *E–470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 22 (Colo.2000)).

### IV.   Authority to Condemn an Absolute Fee Interest

■ The right to condemn private property exists only to the extent it is expressly granted or necessarily implied. *State Dep't of Highways v. Denver & Rio Grande W. R.R. Co.*, 789 P.2d 1088, 1092 (Colo.1990); *see Coquina Oil Corp. v. Harry Kourlis Ranch*,

643 P.2d 519, 522 (Colo.1982) (we narrowly construe statutory authority to condemn). The District has been expressly granted the power "[t]o have and exercise the power of eminent domain and dominant eminent domain and, in the manner provided by article 1 of title 38, C.R.S., to take any property necessary to the exercise of the powers granted." § 32–1–1006(1)(f), C.R.S.2010. Article 1 of title 38, in turn, provides that upon entry of the court's order, the condemnor "shall become seized in fee unless a lesser interest has been sought ... [of all] property described in said [order] as required to be taken, and may take possession and hold and use the same for the purposes specified in [the] petition." § 38–1–105(4), C.R.S.2010. It is undisputed that the District has the authority to condemn land for the purpose of building and maintaining a well and water treatment plant; the question is only whether the District is limited to taking a defeasible, rather than an absolute, fee title.

### A.   Statutory Authority to Condemn

■ The District posits that, because it has the power both to acquire and also to dispose of interests in property, it has the authority to obtain through condemnation a title in absolute fee simple. *See* § 32–1–1001(1)(f), C.R.S.2010. However, while correct, this assertion is not conclusive; just because the District is empowered to own a saleable, absolute fee interest in land does not mean that it is empowered to condemn such an interest through eminent domain. *See Denver & Rio Grande W. R.R.*, 789 P.2d at 1092 (eminent domain powers must be granted explicitly or through necessary implication).

The District also argues that because section 38–1–105(4) explicitly states that the nature of the title taken shall be a fee interest unless a lesser interest is sought, and it explicitly sought an absolute fee simple interest in Lot 78, that is what it obtained. The Halvorsons respond that that statutory language is qualified by language appearing later in the same sentence of the same subsection, stating that, upon being seized in fee, the condemnor "may take possession and hold and use the [property] for the purposes

specified in [the] petition." *See* § 38–1–105(4). This language, they argue, limits the fee interest to one subject to reversion or a right of reentry in the event that the property is not held and used for the purposes specified in the petition. We disagree.

### B. *Lithgow* Rule Does Not Apply

■ Relying on *Lithgow v. Pearson,* 25 Colo.App. 70, 81, 135 P. 759, 763 (1913), the Halvorsons argue that the District only had authority to condemn a defeasible fee estate in Lot 78 because, "[i]f the sovereign may retake [land] only for a public purpose, he may continue to hold that which has been retaken only so long as such holding promotes the public good. Permanent abandonment of the use of the property for the public good must result in reversion of the title." *Id.*

In *Lithgow,* a railroad had condemned, and then abandoned, a right of way across a larger parcel owned by the Lithgows. After the railroad abandoned the right of way and removed the tracks crossing it, Pearson obtained a deed from the railroad quitclaiming its rights therein. Subsequently, the same strip was condemned for use as a public road. The question presented was whether the railroad had originally condemned an easement or defeasible fee (in which case the right of way reverted to the Lithgows upon abandonment and the railroad owned no interest to convey to Pearson) or whether it condemned an absolute fee simple interest (in which case Pearson owned the right of way). The court concluded, based on the above-quoted reasoning and the language of the original condemnation order, that the railroad's interest reverted to the Lithgows upon abandonment and, therefore, they were entitled to the entire proceeds from the subsequent condemnation proceeding. *Id.* at 76–77, 82, 135 P. at 761, 763.

As the Halvorsons acknowledge, *Lithgow* is a 1913 railroad case and it is unclear the extent to which it is still good law. A division of this court cited *Lithgow* as recently as 2009 to support the proposition that "[b]ecause the power to take by eminent domain is qualified, the title may be qualified, even if the condemnor has paid full value for the

property." *Gypsum Ranch Co. v. Bd. of County Comm'rs,* 219 P.3d 365, 370 (Colo. App.2009) (when Colorado Department of Transportation condemned a right of way, its title did not include oil and gas interests because that would have "transferred an interest beyond the purpose of the condemnation" of constructing and operating a highway), *rev'd on other grounds,* 244 P.3d 127 (Colo.2010); *see also Bear Creek Development Corp. v. Genesee Foundation,* 919 P.2d 948, 954 (Colo.App.1996) (citing *Lithgow* in support of the division's conclusion that a privately condemned constitutional way of necessity terminates if and when another access route is procured because such a condemnation "passes only such estate or interest as is required to accomplish [its] purpose").

However, in the almost one hundred years following *Lithgow,* it has been cited (at least in Colorado) exclusively in cases involving condemnation of easements and rights of way, not, as is the case here, condemnations of whole parcels. And, no Colorado appellate court has extended *Lithgow* to conclude, as we are asked to here, that a title obtained by a water and sewer district through condemnation, regardless of the interest sought and the title description, is subject to a right of reentry or a reversionary interest if it is abandoned or subjected to a non-public purpose, such as sale to a private party for a private residence.

■ In fact, although it did not discuss *Lithgow,* at least one division of this court has explicitly held that fee title to parcels of land obtained through condemnation may be subsequently sold to private parties. In *Wall v. City of Aurora,* the division concluded that in addition to using a condemned property for the public purpose for which it was acquired, a condemnor may use a condemned property for a different purpose, or trade or sell it to another at an increased price. 172 P.3d 934, 937–38 (Colo.App.2007). The division in *Wall* reasoned, and we agree, that because the need for taking particular land and the value of what is taken are "judged solely by the conditions existing at the time of the taking," the fact that the condemning public entity later "changes its

corporate mind" does not establish that the taking was in fact for a private use or was otherwise improper. *Id.* at 938 (quoting *Beistline v. City of San Diego*, 256 F.2d 421, 424 (9th Cir.1958)).

Further, numerous Colorado decisions refer to titles obtained through eminent domain condemnation as being in fee simple without noting that the fee is in any way limited or defeasible. *See, e.g., Montgomery Ward & Co. v. City of Sterling*, 185 Colo. at 240–42, 523 P.2d at 466–68 (describing title obtained by city as "unencumbered fee simple absolute"); *E–470 Pub. Highway Auth. v. Wagner*, 77 P.3d 902, 904 (Colo.App.2003); *Silver Dollar Metro. Dist. v. Goltra*, 66 P.3d 170, 171 (Colo.App.2002). And other opinions recognize that private interests may be involved in some aspect of a taking by condemnation, implying that titles thereby obtained are not subject to defeasement simply because the property is later put to private use. *See, e.g., City & County of Denver v. Eat Out, Inc.*, 75 P.3d 1141, 1144 (Colo.App.2003) (fact that city needed only a small parking garage for museum and library parking, but planned a larger one for the sole benefit of private condominium tenants, did not defeat public purpose of garage).

### C. *Kelo* Amendment Does Not Overrule *Wall*

The Halvorsons acknowledge that if we agree with *Wall*, then its reasoning is dispositive of their contention here. They argue, however, that under statutory amendments passed in reaction to the United States Supreme Court case, *Kelo v. City of New London*, 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005) (the *Kelo* amendment), *Wall* is no longer good law.

The *Kelo* amendment states that " 'public use' shall not include the taking of private property for transfer to a private entity for the purpose of economic development or enhancement of tax revenue. Private property may otherwise be taken solely for the purpose of furthering a public use." § 38–1–101(1)(b)(I), C.R.S.2010 (entire subsection added by H.B. 06–1411, Ch. 349, sec. 1, 2006 Colo. Sess. Laws 1749). The Halvorsons assert that the limitation that private property

be taken "solely for the purpose of furthering a public use" nullifies the holding in *Wall* that a condemnor may trade or sell a condemned property to another at an increased price, which was based upon the law as it existed prior to the *Kelo* amendment. We disagree.

The plain language of the *Kelo* amendment limits the *purpose* for which property may be condemned (furthering a public use; here, providing an adequate residential water supply), not the uses to which it may be put after it is condemned or the type of interest that may be condemned. *See Bly v. Story*, 241 P.3d 529, 533 (Colo.2010) (to effectuate the intent of the General Assembly, we look to the plain meaning of the language used, considered within the context of the statute as a whole).

We note that the legislative record confirms this interpretation, as it contains no indication of any intent to change the law with respect to the nature of the interest obtained or to limit the uses to which a property obtained through an eminent domain taking may be put, only an intent to clarify and limit the purposes for which property may be taken. *See, e.g.,* Hearings on H.B. 1411 before the H. State, Veterans, & Military Affairs Comm., 65th Gen. Assemb., 2d Sess. (May 1, 2006).

### D. Conclusion

We conclude that a water and sewer district possesses the power to condemn an absolute fee interest in land. We note that this is consistent with public policy against encumbering property interests. *See E–470 Pub. Highway Auth. v. Argus Real Estate Partners, Inc.*, 70 P.3d 481, 485 (Colo.App. 2002) (public policy is against a restraint on the transfer of property for its fair market value for all time). We further conclude that here, because the District explicitly sought, and paid for, an absolute fee interest in Lot 78, the trial court did not err in so describing the District's title.

### V. Attorney Fees

A property owner is entitled to reasonable attorney fees if the condemnor seeks

property or an interest therein that it is not authorized by law to acquire, or if the award equals or exceeds 130% of the condemnor's last written offer to purchase the property or interest. § 38–1–122(1), (1.5), C.R.S.2010. Although neither party argues to the contrary, we note that attorney fees are awarded separately and, thus, unless the challenge would also implicate the valuation award or right to condemn, section 38–1–111 does not apply.

The Halvorsons argue that the court erred in refusing to award attorney fees pursuant to this statute. We note that because Mr. Halvorson is an attorney, if an award is otherwise appropriate, the Halvorsons are eligible to recover attorney fees even though he has represented himself and his wife throughout these proceedings. *See Giguere v. SJS Family Enterprises, Ltd.,* 155 P.3d 462, 473 (Colo.App.2006). However, none of the three arguments raised by the Halvorsons entitles them to a fee award.

First, they were unsuccessful in their primary contention that the District was not authorized to acquire the interest it sought.

Second, to the extent they argue that because the District's last written offer contained an additional condition, it was actually for nothing, we refuse to consider their argument. A condemning authority is required to negotiate in good faith for the purchase of the property prior to instituting eminent domain proceedings, § 38–1–121(3), (6), C.R.S.2010, and, thus, if the Halvorsons were successful on the merits of this argument, it would call into question the District's authority to condemn Lot 78 and, also, the Halvorsons' right to the $90,000 bond payment. *See* § 38–1–111.

Third, the Halvorsons argue that the award of $90,000 exceeds 130% of the District's purchase offer of $87,300 once the value of the additional condition, dismissal of the trespass case, is taken into account. *See* § 38–1–122(1.5). We take judicial notice that the case, denominated 08CV 157 in Routt County District Court, was dismissed with prejudice pursuant to the joint stipulation of the parties. However, although the Halvorsons claim that the dismissal was based upon a negotiated settlement in which Mr. Halvorson was paid $22,500, there simply is nothing in the record to support this assertion. Therefore, even assuming the Halvorsons are correct that the court should have prorated either the offer or the award to account for the additional condition, there is no basis to indicate that, had the court done so, the result would have been an award that exceeded 130% of the last written offer. *See Bly,* 241 P.3d at 535 (an error that does not affect a party's substantial rights is harmless and is not grounds for reversal).

For the same reasons, we also decline the Halvorsons' request for attorney fees on appeal.

The appeal is dismissed in part, and both the order describing the District's title and the order denying attorney fees are affirmed.

Judge NEY * concurs.

Judge KAPELKE * specially concurs.

Judge KAPELKE specially concurring.

I would dismiss the appeal. Petitioner, Steamboat Lake Water and Sanitation District, previously filed a motion to dismiss the entire appeal based on section 38–1–111, C.R.S.2010. The motions division of this court deferred ruling on the motion to this division.

As pertinent here, section 38–1–111, part of the eminent domain statutes, provides:

> In cases in which compensation is ascertained, if the owner of the property taken or affected prosecutes an appeal as provided by law and the Colorado appellate rules, the petitioner may pay into [the] court or to the clerk thereof the amount of compensation ascertained and awarded for the use of the owner and shall thereupon be entitled to take possession and use the property taken or affected the same as if no such appeal had been taken. The money so deposited shall remain on deposit until

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.

such appeal has been heard and determined. *If the owner elects to receive such money before the determination of said appeal, the appeal shall thereupon be dismissed so far as such owner is concerned.* (Emphasis added.)

Here, petitioner deposited the full amount of compensation awarded, $90,000, plus interest, and respondents, Vance E. Halvorson and Sharon L. Halvorson, withdrew the entire amount. Respondents having elected to receive those proceeds, pursuant to the plain and unambiguous language of the statute, their appeal *"shall"* be dismissed. *See Foiles v. Whittman,* 233 P.3d 697, 699 (Colo. 2010) ("Because it may be presumed that the General Assembly meant what it clearly said, where the statutory language is unambiguous, we do not resort to further rules of statutory construction to determine the statute's meaning." (citing *Bd. of Med. Exam'rs v. Duhon,* 895 P.2d 143, 146 (Colo.1995))); *see also Wells Fargo Bank v. Kopfman,* 226 P.3d 1068, 1072 (Colo.2010) ("A reviewing court begins the analysis with the plain language of the statute. If the statute is clear and unambiguous on its face, then the court need look no further.").

While the majority notes the general rule that one who accepts the benefits of a judgment may not seek reversal of that judgment on appeal, it goes on to conclude that because respondents do not challenge the amount of the jury's verdict, they may proceed with parts of their appeal. The language of section 38–1–111 is mandatory, however, and does not admit of any exceptions.

Further, respondents here *are* challenging the verdict to the extent that they seek a determination on appeal that the title the District obtained in the condemnation proceeding is subject to a condition that the property may only be used for water and sewer purposes and is thus subject to a possibility of reverter in favor of respondents in the event the property is ever used for a different purpose. Further, respondents are claiming that they remain the owners of the oil, gas, and mineral interests in the property. The $90,000 award, however, was based on the appraisal evidence of respondents' own expert witness, who stated that her valu-

ation was based on "the market value of the [property] *in unencumbered, fee simple title of ownership."* (Emphasis added.)

Thus, having received compensation based on the full market value of a fee simple interest in the property, respondents should not be permitted to proceed with an appeal in which they challenge the nature and extent of the title received by the District.

I recognize that in an earlier case a division of this court allowed an appeal to proceed in a context somewhat similar to that presented here. In *Colorado Mountain Properties, Inc. v. Heineman,* 860 P.2d 1388 (Colo.App.1993), the condemnee had accepted an award of $70,000 for two condemned subdivision lots and did not challenge that award on appeal. It had, however, appealed a separate award of $100 for nominal damages for the taking of a roadway easement. In concluding that the condemnee's appeal of the $100 award did not have to be dismissed, the division referred to section 38–1–111, but did not quote or analyze it or purport to interpret its language.

Because the holding in *Colorado Mountain Properties* is contrary to the plain, express language of section 38–1–111, I would decline to follow it.